IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERDELL STARKS, | ) | CASE NO.  3:12-cv-00191 |
| | ) | |
| Petitioner, | ) | JUDGE GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ED SHELDON, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Verdell Starks ("Starks") for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254 on January 26, 2012.  Starks is in the custody of the

Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence

in the cases of *State of Ohio vs. Starks*, Case No. CR04-3093 (Lucas County 2004),

and *State of Ohio vs. Starks*, Case No. CR05-1209 (Lucas County 2005).  For the

reasons set forth below, Starks' claims for relief should be dismissed as follows:

| Reason for dismissal | Ground for relief to be dismissed |
|---|---|
| Non-cognizable claim | 14-20, 22, 29-31 |
| Procedural default | 21, 26-28 |
| Without merit | 1-5, 9-11, 23-25, 32, 33 |
| Previously withdrawn | 6-8, 12, 13, 17 |

As these dismissals account for all of Starks' claims, Starks' petition should be

dismissed in its entirety.

<center>I.</center>

The state appellate court reviewing Starks' direct appeal found the following facts

to be relevant to the appeal:

> {¶ 2} On August 23, 2004, an African-American male wearing a wig, baseball cap and large tinted glasses entered a Toledo Cash Advance store.  The man pointed what appeared to be a gun wrapped in cloth at the office manager, gesturing to the counter where the money was kept.  He said, "You have three seconds."  The manager opened the cash drawer and handed over a little over $200.  The robber fled.

> {¶ 3} A week later, an African-American male wearing a shoulder length wig came into a Toledo BP station, jumped the counter and grabbed the attendant, pointing a gun at her head.  The robber pushed the attendant to the cash register and ordered her to open it.  When she did, he grabbed the money, slightly under $200, ordered the attendant into a back room and fled.

> {¶ 4} On September 26, 2004, a gunman wearing a hooded sweatshirt and large tinted glasses entered a Toledo Sunoco station, telling the attendant that she had ten seconds to open the cash drawer.  The man took the bills in the cash drawer, under $100, and left, telling the attendant to, "have a good night."

> {¶ 5} On September 30, 2004, an African-American male carrying a handbag and wearing a blue dress, a wig and tennis shoes entered a South Toledo branch of Sky Bank.  With a curved object wrapped in a sock in his right hand, the robber leaped the counter, pushed aside the teller and emptied the contents of her drawer into his handbag.  Following this, he jumped on the counter, stood, turned and told everyone to, "Have a good day."  He then fled with more than $1,000.

> {¶ 6} Police and FBI investigating the bank robbery found a sheet of paper in the secure area behind the bank's counter.  It was a worker document for one Andrea Starks.  Sky Bank ascertained that Andrea Starks was not a customer.  A review of bank security photographs revealed that when the robber entered the bank he was carrying a piece of paper.  When he left, the paper was no longer visible.

> {¶ 7} Andrea Starks is the spouse of appellant, Verdell Starks.  Investigators believed that appellant matched the description given by witnesses in all four robberies.  Police assembled a photo array, containing pictures of six men,

<center>2</center>

including appellant, and showed the array to witnesses.  Each of the witnesses picked appellant from the array.

{¶ 8} Appellant was arrested and, in an interrogation with the FBI, confessed to the bank robbery.  On October 14, 2004, appellant was named in an indictment charging two counts of aggravated robbery with firearm specifications and two counts of robbery.  The indictment included the Sunoco station robbery for which he was eventually convicted.  On January 28, 2005, a second indictment was handed down, charging appellant with an additional four counts of aggravated robbery with firearm specifications and four counts of robbery.  Included in this indictment were the Sky Bank, Cash Advance, and BP robberies.  These cases were consolidated for trial.

{¶ 9} Appellant pled not guilty and moved to suppress witness identification and his statements to police.  He also moved to sever the bank robbery case from the rest of the charges.  The trial court denied appellant's suppression motion, but granted severance.  A subsequent motion to sever the remaining armed robbery charges from each other was denied.

{¶ 10} Following a jury trial, appellant was convicted of the bank robbery.  Before trial for the remaining armed robbery charges, appellant dismissed his counsel and elected to proceed as his own trial counsel, with a court-appointed backup counsel to provide aid.  Following another jury trial, appellant was found guilty of three counts of aggravated robbery with two firearm specifications.

{¶ 11} The trial court denied appellant's motion for a new trial and, following a presentence investigation, sentenced him to a four-year period of incarceration for the bank robbery, to be served consecutively to five years for the Sunoco robbery, five years for the BP robbery and two consecutive three-year terms for the firearm specifications.  An additional concurrent five-year sentence was imposed for the Cash Advance robbery.  The remaining counts in the indictment were dismissed prior to or during trial.

*State v. Starks*, 2007 WL 2745360, at *1-*2 (Ohio App. 2007).

A.    *Direct Appeal*

Starks, represented by counsel, timely appealed his convictions and sentences,

and the state appellate court consolidated his appeals.  In his brief in support of his

appeal, Starks asserted ten assignments of error:

Assignment of Error I:  The trial court erred by not granting Starks' Rule 29 motions for judgment of acquittal at both trials because there was insufficient

3

evidence to prove each element of the crimes charged.

Assignment of Error II:  The trial court erred in overruling Starks' pretrial motion to suppress the witnesses' identification because the process was prejudicially and irreparably tainted by the process used, including a second array that was never produced.

Assignment of Error III:  Starks' trial counsel provided ineffective assistance of counsel by failing to pursue discovery and object to improper evidence.

Assignment of Error IV:  The trial court verdicts were against the manifest weight of the evidence.

Assignment of Error V:  Starks' constitutional right to a Speedy Trial was violated because he was in custody for more than 90 days before his trial began.

Assignment of Error VI:  The trial court abused its discretion by only ordering that the Sky Bank robbery be tried separately given additional factual differences between the remaining counts.

Assignment of Error VII:  The trial court should have ordered Starks' confession inadmissible because it could not provide evidence that a crime had occurred independent of his confession.

Assignment of Error VIII:  The trial court abused its discretion with its rulings on Starks' motion for new counsel, and for allowing Quinn to testify as an expert witness.

Assignment of Error IX:  The prosecutor made comments during the trial, and during closing arguments that resulted in an improper comment on the evidence or vouching.

Assignment of Error X:  Starks' sentence violated the Ex Post Facto Clause of the United States Constitution.

(Capitalization in the original.)  On September 21, 2007, the state appellate court

affirmed Starks' convictions, but it reversed his sentences and remanded the case for

re-sentencing pursuant to *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).

Starks, *pro se*, timely appealed the state appellate court's decision to the Ohio

Supreme Court.  In his memorandum in support of jurisdiction, Starks asserted six of

4

the same issues raised in the appellate court but omitted his claims pertaining to

manifest weight (Assignment of Error IV), speedy trial ((Assignment of Error V),

severance (Assignment of Error VI), and *ex post facto* sentencing (Assignment of Error

X).  On January 23, 2008, the Ohio Supreme Court denied leave to appeal and

dismissed Starks's appeal as not involving any substantial constitutional question.

On October 29, 2007, Starks filed in the appellate court an application to reopen

his appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)"), citing ineffective assistance of

counsel as grounds for reopening.  In his application, Starks cited three respects in

which his appellate counsel had allegedly rendered ineffective assistance:[1]

> Appellant was denied due process of law in violation of the Ohio Rules of
> Appellate Procedures [sic] where appellate counsel refused to invoke the
> mandatory procedures of App. R. 9(C) and (E) to correct the incomplete
> transcript of proceedings in violation of the 6th and 14th Amendment rights under
> the United States Constitution; Article One, Sections 10 & 16 of the Ohio
> Constitution.
>
> The appellant was denied the effective assistance of appellate counsel where
> appellate counsel was deficient for failing to raise ineffective assistance claims
> concerning trial counsel's failure to present alibi witness [sic] for the Sky Bank
> robbery, in violation of the 6th and 14th Amendment to the United States
> Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.
>
> Counsel for the State of Ohio deprived appellant of his constitutional right to due
> process under the Fourteenth Amendment of the United States Constitution;
> Article One, Sectoins [sic] 10 & 16 of the Ohio Constitution, where the

---

[1]  Starks also alleged the following:

This appeal, as of right, must be allowed to be re-opened where there exist [sic] a
genuine issue as to appellant being deprived of the effective assistance of appellate
counsel when the attorney denies him his absolute right to procedural due process
of law in failing to provide the record in full for appeal purposes.

(Punctuation altered from the original).  This allegation, however, was apparently a
summary of his three grounds for relief.

prosecution failed to produce exculpatory material evidence that was specifically requested by the applicant, prior to the conclusion of appellant's trial, pursuant to Crim. R. 16(B)(1), (C), (D); and Ohio Rules of Evidence 1001 & 1002.

On November 28, 2007, the state appellate court denied Starks' application to reopen. The court found that Starks had failed to substantiate his claim that the trial record was inaccurate and failed to demonstrate that his alleged alibi could, in fact, provide the necessary alibi.  Consequently, according to the court, Starks had failed to demonstrate that counsel had been ineffective for failing to raise these issues.  With respect to the alleged failure to produce exculpatory evidence, the court found that this was unrelated to any claim of ineffective assistance of Starks' appellate counsel and that, in any case, this claim was barred by *res judicata*, as the claim could have been raised on direct appeal.

Starks filed in the Ohio Supreme Court a timely appeal of the state appellate court's November 28, 2007 decision.  In his memorandum in support of jurisdiction, Starks raised as propositions of law the same three grounds for relief that he had asserted in his R. 26(B) motion.  On March 7, 2008, the Ohio Supreme Court dismissed Starks' appeal as not involving any substantial constitutional question.

B.    *Re-sentencing*

In a judgment journalized on December 4, 2007, the trial court re-sentenced Starks to the same sentences it had imposed originally.  Starks, represented by counsel, filed in the state appellate court a notice of appeal of his re-sentencing in both cases.  On February 12, 2008, the state appellate court dismissed Starks' appeals as

6

untimely.[2]

On July 31, 2008, Starks moved in the state appellate court for a delayed appeal pursuant to Ohio App. R. 5(B) and for appointment of counsel.  On September 25 and 26, 2008, the state appellate court granted Starks' motion, reopened appeals in both cases, consolidated the appeals, and appointed appellate counsel.  In his brief in support of his appeal, Starks raised a single assignment of error:

> The trial court's sentence violated the *Ex Post Facto* Clause of the United States Consitution [sic] and thereby appellant's Sixth Amendment rights.

On July 17, 2009, the state appellate court *sua sponte* ruled that Starks' re-sentencing had been invalid because the trial court failed to include in its judgment entries a finding of Starks' guilt.  The state appellate court remanded the case to the trial court for ten days to issue revised sentencing entries.  On July 22, 2009, the trial court issued revised sentencing entries *nunc pro tunc*.  On December 31, 2009, the state appellate court found that Starks had waived his sole assignment of error by failing to assert it at sentencing.  It also found that the re-sentencing did not violate the *Ex Post Facto* Clause and was not plain error.  The appellate court, therefore, affirmed the judgment of the trial court.

On December 31, 2008, the Ohio Supreme Court issued the following decision without further opinion:

> Lucas App. No. L-08-1220. It is ordered by the court, sua sponte [sic], that appellant Verdell Starks is found to be a vexatious litigator pursuant to S.Ct.Prac.R. XIV(5)(B).  Accordingly,

---

[2]  Ohio App. R. 3 requires appellants to file a direct appeal 30 days after entry of judgment to be appealed.

7

It is further ordered by the court that Verdell Starks is prohibited from continuing or instituting legal proceedings in this court without first obtaining leave.  Any request for leave shall be filed with the Clerk of this court for the court's review.

Pfeifer, O'Connor, and Cupp, JJ., dissent.

Discretionary appeal not accepted.

*State v. Starks*, 120 Ohio St. 3d 1456, 898 N.E.2d 970 (Table) (2008).

Respondent asserts that Starks failed to appeal the state appellate court's

December 31, 2009 decision to the Ohio Supreme Court and includes no documents

related to such an appeal.  However, on January 19, 2010, the Ohio Supreme Court

issued the following decision, captioned "In re Verdell Starks":

On December 31, 2008, this Court found Verdell Starks to be a vexatious litigator under S.Ct.Prac.R. XIV(5)(B).  This Court further ordered that Starks was prohibited from continuing or instituting legal proceedings in this Court without first obtaining leave.  On January 13, 2010, Starks submitted a motion for leave to file an appeal/memorandum in support of jurisdiction.  Upon review of the proffered filing the Court finds it without merit.  Accordingly,

It is ordered by the Court that Starks is denied leave to appeal.

Traverse, Exh. 4.

C.    *Petitions to vacate sentence*

On November 28, 2006, Starks filed in the trial court pursuant to Ohio Rev. Code

§ 2953.21 ("§ 2953.21") a petition to vacate or set aside the sentence in his convictions

related to the Sky Bank robbery.  In his brief in support of his petition, he asserted six

grounds for relief:

<u>Ground One</u>:

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendment (Section One), of the United States Constitution; Section 10-Article One and Section 16

8

Article One of the Ohio Constitution, where counsel failed to present a defense theory as to the charged offense(s) in support of Petitioner's defense.

Ground Two:

Counsel for Petitioner deprived Petitioner of his Constitutional Right to Due Process as guaranteed by the Fifth, Sixth, and Fourteenth Amendment, (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One, of the Ohio Constitution, where counsel failed to properly investigate and interview promising witnesses on behalf of the Petitioner in support of Petitioner's Actual Innocence.

Ground Three:

Counsel for Petitioner deprived Petitioner of his Constitutional Right to Due Process as guaranteed by the Fifth, Sixth, and Fourteenth Amendment, (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One, of the Ohio Constitution, where counsel failed to call alibi defense witness establishing Petitioner's Actual Innocence.

Ground Four:

Counsel for Petitioner deprived Petitioner of his Constitutional right to Due Process as guaranteed by the Fifth, Sixth, and Fourteenth Amendment, (Section One), of the United States Constitution; Section 10 Article One and Section 16 Article One, of the Ohio Constitution, where counsel failed to cross examine witnesses effectively.

Ground Five:

Counsel for Petitioner deprived Petitioner of his Constitutional right to Due Process as guaranteed by the Fifth, Sixth and Fourteenth Amendment, (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One, of the Ohio Constitution, where counsel failed to introduce material evidence (Police Report), into evidence.

Ground Six:

The cumulative errors of trial counsel deprived Petitioner of his Constitutional Right to Due Process under the Fifth, Sixth and Fourteenth Amendment, (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One, of the Ohio Constitution.

(Capitalization and punctuation in the original). The state moved for summary judgment

or to dismiss Starks' petition.  Starks moved for summary judgment in opposition to the state's motion.

Before the court could rule on Starks' petition or on the motions related to the petition, Starks filed in the trial court on November 30, 2006, pursuant to § 2953.21, a petition to vacate or set aside sentence in his  his convictions for the Sunoco, BP, and Cash Advance robberies.  Starks' petition asserted eight grounds for relief

<u>Ground One</u>:

Counsel for the State of Ohio deprived Petitioner of his Constitutional right to due process as guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16 - Article One of the Ohio Constitution, where the prosecution intentionally hid and/or destroyed, and failed to produce exculpatory material evidence that was specifically requested by the Petitioner prior to the conclusion of Petitioner's trial, pursuant to Criminal Rule 16-Section (B) - c&d, and Ohio Rules of Evidence 1001 and 1002.

<u>Ground Two</u>:

Petitioner contend [sic] herein, that Counsel for the State of Ohio has hidden and/or destroyed, in violation of R.C. 2921.12 (tampering with evidence), and failed to produce exculpatory material evidence (a video surveillance tape), specifically and timely requested by the Petitioner, prior to the conclusion of Petitioner's trial, in violation of Petitioner's right to due process as guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution; Section 16-Article One of the Ohio Constitution, C.R. 16(b) c&d, and Rule of Evidence 1001 and 1002.

<u>Ground Three</u>:

Counsel for the State of Ohio deprived Petitioner of his Constitutional right to due process as guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution, where the prosecution intentionally hid and/or destroyed, failed to produce exculpatory material evidence that was specifically requested by the Petitioner prior to the conclusion of Petitioner's trial.

<u>Ground Four</u>:

The State failed to produce relevant discovery information which was generated

by the Toledo Police Department during the scope of its investigation, in violation of Petitioner's right to due process as guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution.

Ground Five:

The State failed to provide Petitioner with all information related to the allegations in the possession and control of the Toledo Police Department, in violation of Petitioner's right to due process as guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution.

Ground Six:

The State failed to provide Petitioner with all information related to the allegations in the possession of the State of Ohio, in violation of Petitioner's right to due process under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution.

Ground Seven:

The Prosecution engaged in misconduct by failing to make available favorable and material evidence requested by the Petitioner prior to the conclusion of trial, in violation of Petitioner's right to due process, as guaranteed under the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution.

Ground Eight:

Governmental actions interfered with and prevented Petitioner from his right to a fair and meaningful trial, in violation of Petitioner's right to due process as guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution.

(Capitalization and punctuation in the original.)

On July 20, 2007, Starks filed in the trial court an amended petition for post-conviction relief from the judgment and sentences in his convictions for the Sunoco, BP, and Cash Advance robberies.  The amended petition added four additional grounds for relief:

11

Ground Nine:

Petitioner has been deprived prejudicially of his constitutional right to due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution; Section 10, Article One of the Ohio Constitution; and Section 16, Article One of the Ohio Constitution, where the transcript of proceedings were [sic] deliberately altered, falsified, and manufactured to exclude the impermissibly suggestive pre-trial photo-array procedures of the investigating officers of the Toledo Police Department that were conducive to irreparable mistaken identification by the court reporter and the State of Ohio.

Ground Ten:

The investigating officer, Detective Kermit Quinn, and the Toledo Police Department, deliberately and intentionally hid and/or destroyed a missing photo array that was shown to Victoria Hall containing a photo of a suspect that the Toledo Police Department believed to be responsible for the B.P. gas station robbery.  Prior to Petitioner's impermissibly pre-trial identification [sic] by Victoria Hall, that did not contain a photo of the petitioner, in violation of the Petitioner's constitutional right to due process as guaranteed under the 5th and 6th Amendments of the United States Constitution; Section 10, Article One of the Ohio Constitution; Section 16, Article One of the Ohio Constitution.

Ground Eleven:

The investigating officer, Detective Paul Tetuan, and the Toledo Police Department intentionally falsified the official police report as well as deliberately perjured himself on June 2, 2005, in an attempt to cover up the fact that Gwen Bowers "did not" in fact identify the Petitioner on October 1, 2004, and that there were approximately three different photo arrays shown to Gwen Bowers prior to Gwen Bowers' impermissibly suggestive pretrial identification, two of which has [sic] not been provided to petitioner and are missing intentionally, either hidden and/or destroyed by the Toledo Police Department, in violation of petitioner's right to due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; Section 10, Article One of the Ohio Constitution; Section 16, Article One of the Ohio Constitution.

Ground Twelve:

The Investigating officers, Detective Dennis Richardson and Detective Kermit Quinn of the Toledo Police Department, deliberately and intentionally hid and/or destroyed a missing photo array that was shown to Laura Maunz containing a photo of a suspect that the Toledo Police Department believed to be responsible for the Case Advance robbery, prior to Petitioner's impermissibly suggestive pre-trial identification by Laura Maunz that did not contain a photo of the petitioner, in

violation of petitioner's right to due process as guaranteed by the Fifth and Sixth
Amendments of the United States Constitution; Section 10, Article One of the
Ohio Constitution; Section 16, Article One of the Ohio Constitution

(Capitalization and punctuation altered from the original.)  Upon motion from the state,

the trial court struck Starks' amended petition on the ground that he had not obtained

leave of court to file such an amendment, as required by Ohio Civ. R. 15(A).

Stark filed a timely notice of appeal of the trial court's dismissal of his amended

petition.  As the appeal included convictions in both of Starks' cases but contained a

common set of facts, the state appellate court consolidated both cases.  Starks asserted

a single assignment of error in his appeal:

The trial court erred and/or abused its discretion to the prejudice of Appellant in
refusing to permit and/or in striking Appellant's timely filed "Amended Petition for
Post-conviction Relief," from the record, in violation of Appellant's 5th and 14th
Amendments of the United States Constitution; Sections 10 and 16 of the Ohio
Constitution; R.C. 2953.21(F); and Civ. R. 15(A).

On October 5, 2007, the state appellate court ruled that Starks could not appeal the

order striking his amended petition until the trial court had ruled on his petitions to

vacate and/or set aside sentence.

D.    *Motions to correct and supplement the record*

Before the trial court could rule on Starks motions to vacate or set aside

sentence, Starks filed *pro se* in the trial court on December 26, 2006, pursuant to Ohio

App. R. 9(E) ("R. 9"), a motion for correction or modification of the record.  In his

memorandum in support of his motion, Starks alleged that material testimony by three

witnesses against him had been omitted from the trial transcript and that a record of this

testimony was needed for his appeal.  On April 26, 2007, the trial court denied Starks'

motion for correction or modification of the record, finding that Starks' allegations

13

regarding the testimony of the trial witnesses were inaccurate.

On April 30, 2007, Starks filed in the trial court pursuant to R. 9 a *pro se* motion to supplement the record.  In his memorandum in support of his motion, Starks alleged various errors or omissions in the testimony of his wife, who provided testimony in support of an alibi for Starks, and in the testimony of three witnesses against him.  On May 7, 2007, before the trial court could rule on his motion to supplement, Starks filed in the trial court pursuant to Ohio Civ. R. 52 ("R. 52") a motion for separate findings of fact and conclusions of law regarding each addition or alteration to the record that Stark was seeking in his motion to supplement.  Starks' motions to supplement and for findings of fact and conclusions of law addressed his convictions in both case no. CR04-3093 and case no. CR05-1209.  On May 29, 2007, the trial court consolidated Starks' motions and stayed Starks' two petitions to vacate pending resolution of issues in Starks' direct appeal.  The court then denied the motion to supplement on the ground that Starks' allegations regarding the witnesses' testimony were inaccurate and denied the motion for findings of fact and conclusions of law on the ground that R. 52 was inapplicable to Starks' case.

Starks timely appealed *pro se* the trial court's May 29, 2007 rulings in both cases to the state appellate court.  The state appellate court consolidated the appeals.  On July 24, 2007, the appellate court found that the trial court's stay of Starks' motion to vacate was not a final order from which Starks could appeal and dismissed that claim. It also found that Starks had no right to appeal *pro se* from the decision denying his motion to supplement the record on direct appeal because Starks was represented by counsel on direct appeal and had no right to hybrid representation under Ohio law.  The

14

state appellate court, therefore, dismissed Starks' appeal.

On June 29, 2007, Starks filed a timely notice of appeal of the state appellate court's July 24, 2007 decision to the Ohio Supreme Court.  In his two memoranda in support of jurisdiction, Starks asserted the same four propositions of law in both cases:

Proposition of Law No. 1:

The trial court erred and/or abused its discretion to the prejudice of appellant when it failed to correct the obvious omissions and/or misstatements, on "proper suggestion" or "its own initiative," prior to denying the Appellant's timely filed "motion for correction or modification of record," App. R. 9(E).

Proposition of Law No. 2:

The trial court erred and/or abused its discretion to the prejudice of Appellant by not ruling on the timely filed petition for postconviction, pursuant to Crim. R. 35, without providing sufficient cause for delay, and absent any findings of fact and conclusions of law.

Proposition of Law No. 3:

The trial court abused its discretion with its ruling denying appellant's App. R. 9(E) motion without first conducting an evidentiary hearing, given the facts that were obviously material omissions and misstatements in the transcripts of proceedings that was [sic] not due to the fault of appellant.

Proposition of Law No. 4:

The trial court erred and/or abused its discretion to the prejudice of appellant when it failed to make findings of fact and conclusions of law with respect to its denial of appellant's motion to supplement the record, which precludes appellant from making a reasonable appeal and/or prevents the appellate court from any meaningful judicial review.

(Capitalization and punctuation altered from the original.)  On December 12, 2007 and February 11, 2008, the Ohio Supreme Court denied leave to appeal and dismissed the appeals as not involving any substantial constitutional question.

During the appeal of the trial court's May 29, 2007 decision, on June 18, 2007,

15

Starks filed in the trial court a second motion for separate findings of fact and conclusions of law with respect to his already-denied motion to supplement the trial record for use in his appeal.  The trial court denied this motion on June 26, 2007 without opinion.  On June 28, 2007, Starks filed in the trial court a motion for production of partial verbatim transcripts of his trial and pre-trial proceedings, citing his indigency and his need for the transcript in post-appeal proceedings.  On July 2, 2007, the trial court denied this motion without opinion.

On July 24, Starks filed a timely *pro se* notice of appeal of the trial court's June 26, 2007 denial of his second motion for findings of fact and conclusions of law.  Starks asserted a single assignment of error in his brief in support of his appeal:

> **Assignment of Error I**: The trial court erred and/or abused its discretion to the prejudice of Appellant by refusing to provide findings of fact and conclusions of Law, with respect to its denial of Appellant's Motion to Supplement the Record/Proposed Statement of Proceedings, filed April 30, 2007.

(Capitalization in the original.)  On July 24, 2007, Starks timely filed a *pro se* notice of appeal of the trial court's July 2, 2007 denial of his motion for partial transcripts.  Starks asserted two assignments of error in this appeal:

> **Assignment of Error I**: The trial court erred and/or abused its discretion to the prejudice of Appellant by denying Appellant's Motion for Production of Partial Verbatim transcripts by Indigent Defendant, with respect to the denial of Appellant's Motion to Supplement the Record, filed on April 30, 2007.

> **Assignment of Error II**: The trial court erred and/or abused its discretion to the prejudice of Appellant by denying Appellant's Motion for Production of Partial Verbatim transcripts by Indigent Defendant, with respect to the denial of Appellant's request for partial transcripts for purposes of appeal pursuant to R.C. 2953.21.

(Capitalization in the original.)  On August 13, 2007, the state appellate court consolidated these appeals.  In the same order, the court also held that although Starks

16

could appeal the trial court's denial of his motion for findings of fact and conclusions of law, he could not appeal the underlying motion to correct the transcript, as the time for filing such an appeal had expired.  Then, on September 4, 2007, upon the state's motion to dismiss, the state appellate court found that Starks' *pro se* appeals were related to his pending direct appeal and were barred by Ohio's rule against hybrid representation.  The state appellate court then dismissed both appeals.

On September 6, 2007, Starks filed a timely notice of appeal of the state appellate court's August 13, 2007 order to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Starks asserted a single proposition of law:

> The Court of Appeals erred and/or abused its discretion to the prejudice of appellant by making erroneous factual determination prejudicial to the appellant's right to due process pursuant to App. R. 9(E), and right to appeal, in violation of the appellant's 4th and 14th Amendment rights of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

(Capitalization altered from the original.)  On December 31, 2007, the Ohio Supreme Court denied Starks leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On October 1, 2007, Starks filed a timely notice of appeal of the state appellate court's September 4, 2007 ruling to the Ohio Supreme Court.  Starks asserted a single proposition of law in his memorandum in support of jurisdiction:

> The Sixth Appellate District Court erred and/or abused its discretion to the prejudice of Appellant by ruling that the Appellant is not entitled to file a Pro Se Notice of Appeal from the denial of Appellant's pro se motions in the trial court, when in fact, the District Court, Trial Court, and the State of Ohio, initially, all entertained said pro se motions originally without any argument of hybrid representation, in violation of Appellant's constitutional right to due process under the Fourteenth Amendment of the United State Constitution; Article One, Sections 10 & 16 of the Ohio Constitution.

17

(Capitalization in the original.)  On January 11, 2008, the Ohio Supreme Court denied Starks leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

E.    *Application for leave to file a motion for a new trial*

On August 10, 2007, Starks filed an application for leave to move for a new trial, citing "newly discovered evidence" as grounds for his application.  The "newly discovered evidence" consisted of the affidavit of Robert Earl Finley confessing to the Cash Advance robbery.

On June 23, 2008, the trial court issued an Opinion and Judgment Entry disposing of Starks' various petitions and motions.  The trial court granted the state's motion for summary judgment and denied Starks' two petitions to vacate sentence as both untimely and barred by the doctrine of *res judicata*.  In addition, the trial court denied Starks' motion to supplement, finding that Stark had failed to produce evidence that the record was inaccurate.  The court also denied Starks' motion for findings of fact and conclusions of law with respect to his motions to vacate as those motions were untimely filed.  Finally, the trial court granted Starks' application for leave to file a motion for a new trial.

Starks timely filed a notice of appeal of the trial court's June 23, 2008 decision with respect to case no. CR04-3093.  In his brief in support, Starks asserted ten assignments of error:

> **ASSIGNMENT OF ERROR ONE:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by dismissing the Appellant's "timely" filed Petition to Vacate and/or Set Aside Sentence as being "untimely," in violation of Appellant's right to due process pursuant to R.C. §2953.21; Crim.R. 35(C); the 14th Amendment of the United States Constitution; Article One, Sections 10 & 16

18

of the Ohio Constitution.

**ASSIGNMENT OF ERROR TWO:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by failing to provide sufficient findings of fact and conclusions of law with respect to the dismissal of Appellant's timely filed petition for post-conviction relief, in violation of Appellant's right to due process pursuant to R.C. §2953.21; Crim.R. 35(C); the 14th Amendment of the United States Constitution; Article One, Sections 10 & 16 of the Ohio Constitution.

**ASSIGNMENT OF ERROR THREE:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by ruling that Appellant's claims were barred by the doctrine of res judicata.

**ASSIGNMENT OF ERROR FOUR:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by granting the State's "second" request for summary judgment, when said request was not timely filed pursuant to R.C. §2953.21(D), and had procedurally failed to make a "timely" responsive pleading as required by R.C. §2953.21(D) and Civ. R. 15(A), to Appellant's timely filed post-conviction [sic] filed November 30, 2006.

**ASSIGNMENT OF ERROR FIVE:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by "striking" the Appellant's "timely" filed "Amended Petitioner for Post-conviction Relief" from the record, when Appellant in fact was entitled to amend petition that was not timely responded to by the State of Ohio pursuant to R.C. 2953.21(D), in violation of Appellant's right to due process pursuant to the 5th and 14th Amendments of the United States Constitution; Article One, Sections 10 & 16 of the Ohio Constitution; R.C. §2953.21(F); and Civ. R. 15(A).

**ASSIGNMENT OF ERROR SIX:**  The trial court erred and/or abused its discretion to the prejudice of Appellant when it failed to provide sufficient "FACTUAL" findings of fact and conclusions of law with respect to striking Appellant's "timely" filed "Amended Petition" from the record, as required by Section 2953.21, Ohio Revised Code.

**ASSIGNMENT OF ERROR SEVEN:**  The trial court should have appointed counsel for Petitioner where allegations in the Petition for Post-Conviction Relief warranted an Evidentiary Hearing.

**ASSIGNMENT OF ERROR EIGHT:**  The trial court erred and/or abused its discretion to the prejudice of Appellant by failing to conduct an evidentiary hearing on Appellant's timely filed Petition for Post-Conviction Relief when Appellant had submitted evidentiary documents containing sufficient operative

19

facts to warrant a hearing.

**ASSIGNMENT OF ERROR NINE:** Governmental actions interfered with and prevented Petitioner from his right to a fair and meaningful trial, in violation of Petitioner's right to due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; Section 16-Article One of the Ohio Constitution.

**ASSIGNMENT OF ERROR TEN:** The trial court should have granted Appellant's request for a private investigator, where allegations in the Petition For Post-Conviction Relief warranted an evidentiary hearing and contained evidentiary documents and sufficient operative facts that require the assistance of an investigator to produce in establishing the Appellant's contentions and allegations of being "Actual Innocent."

(Capitalization and punctuation in the original.) On March 13, 2009, the state appellate court affirmed the judgment of the trial court. The appellate court found that the trial court had erred in concluding that Starks' petition for postconviction relief was untimely. However, the appellate court also found that the trial court had properly determined that Starks' petition for postconviction relief was barred by *res judicata*. Thus, the appellate court found that the trial court's error with regard to the timeliness of the petition was harmless. The appellate court otherwise affirmed the opinion of the trial court.

Starks also appealed the trial court's June 23, 2008 decision with respect to case no. CR05-1209 (the Sky Bank robbery) to the state appellate court. In his brief in support of his appeal, Starks asserted 22 assignments of error. The first eight assignments of error were the same as the assignments of error asserted in his appeal of the June 23, 2008 decision with respect to case no. CR04-3093. Assignments of error 9-22 were the following:

**ASSIGNMENT OF ERROR NINE**

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth and Fourteenth Amendments (Section

20

One), of the United States Constitution; Section 10-Article One and Section 16 Article One of the Ohio Constitution, where counsel failed to present a plausible defense theory as to the charged offense in support of Petitioner's defense.

### ASSIGNMENT OF ERROR TEN

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One of the Ohio Constitution, where counsel failed to properly investigate and interview promising witnesses on behalf of the Petitioner in support of Petitioner's actual innocence.

### ASSIGNMENT OF ERROR ELEVEN

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One of the Ohio Constitution, where counsel failed to call viable alibi defense witness establishing Petitioner's Actual Innocence.

### ASSIGNMENT OF ERROR TWELVE

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments (Section One), of the United States Constitution; Section 10 Article One and Section 16 Article One of the Ohio Constitution, where counsel failed to cross-examine witnesses effectively.

### ASSIGNMENT OF ERROR THIRTEEN

Counsel for Petitioner deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth, Sixth, and Fourteenth Amendments (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One of the Ohio Constitution, where counsel failed to introduce exonerating material evidence, (Scientific Evidence [Police Report], [sic] into evidence.

### ASSIGNMENT OF ERROR FOURTEEN

The cumulative errors of Trial Counsel deprived Petitioner of his Constitutional right to die process under the Fifth, Sixth, and Fourteenth Amendment (Section One), of the United States Constitution; Section 10-Article One and Section 16-Article One of the Ohio Constitution

## ASSIGNMENT OF ERROR FIFTEEN

The Trial Court should have granted Appellant's request for a private investigator, where allegations in the Petition For Post-conviction Relief warranted an evidentiary hearing and contained evidentiary documents and sufficient operative facts that require the assistance of an investigator to produce in establishing [sic] the Appellant's substantiated contentions and allegations of being "Actually Innocent."

## ASSIGNMENT OF ERROR SIXTEEN

Counsel for the State of Ohio deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution, where the prosecution intentionally hid and/or destroyed, and failed to produce exculpatory material evidence that was specifically requested by the Petitioner prior to the conclusion of Petitioner's trial, pursuant to Criminal Rule 16-Section (B), (c), & (d), and Ohio Rules of Evidence 1001 & 1002.

## ASSIGNMENT OF ERROR SEVENTEEN

Petitioner contends herein, that counsel for the State of Ohio has hidden and/or destroyed, in violation of R.C. 2921.21 (tampering with evidence), and failed to produce exculpatory material evidence (a video surveillance tape), specifically and timely requested by the Petitioner, prior to the conclusion of Petitioner's trial, in violation of Petitioner's right to due process as guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution; Section 16-Article One of the Ohio Constitution; Crim.R. 16(B), (c) & (d), and Rule of Evidence 1001 & 1002.

## ASSIGNMENT OF ERROR EIGHTEEN

Counsel for the State of Ohio deprived Petitioner of his Constitutional right to due process as guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution; Section 16-Article One of the Ohio Constitution, where the prosecution intentionally hid and/or destroyed, failed to produce exculpatory material evidence that was specifically requested by the Petitioner prior to the conclusion of Petitioner's trial.

## ASSIGNMENT OF ERROR NINETEEN

The State failed to produce relevant discovery information which was generated by the Toledo Police Department during the scope of its investigation, in violation of Petitioner's right to due process as guaranteed by the Fifth and Fourteenth

22

Amendment of the United States Constitution; Section 16-Article One of the Ohio
Constitution.

### ASSIGNMENT OF ERROR TWENTY

The State filed to provide Petitioner with all information related to the allegations
in the possession and control of the Toledo Police Department, in violation of
Petitioner's right to due process as guaranteed by the Fifth and Fourteenth
Amendments of the United States Constitution; Section 16-Article One of the
Ohio Constitution.

### ASSIGNMENT OF ERROR TWENTY-ONE

The State filed to provide Petitioner with all information related to the allegations
in the possession and control of the State of Ohio, in violation of Petitioner's right
to due process under the Fifth and Fourteenth Amendment of the United States
Constitution; Section 16-Article One of the Ohio Constitution.

### ASSIGNMENT OF ERROR TWENTY-TWO

The prosecution engaged in misconduct by failing to make available favorable
material evidence requested by Petitioner prior to the conclusion of trial, in
violation of Petitioner's right to due process as guaranteed by the Fifth and
Fourteenth Amendment of the United States Constitution; Section 16-Article One
of the Ohio Constitution.

(Capitalization and punctuation in the original.)  On March 13, 2009,  the state appellate

court issued its decision.  The court dismissed the first eight assignments of error for the

same reasons it had dismissed the parallel eight assignments of error in case no.

CR04-3093.  In addition, the court found that assignments of error 9-13 were barred by

*res judicata* and were disregarded as not separately argued as required by Ohio App. R.

16(A) ("R. 16").  The court also found that assignments of error 14 and 16-22 also

violated R. 16 and were disregarded.  Finally, the appellate court found that assignment

of error 15 duplicated assignment of error 10 in case no. CR04-3093 and was dismissed

for the same reason.  Thus, the state appellate court affirmed the judgment of the trial

court.

23

Respondent asserts that Starks failed to appeal the state appellate court's two March 13, 2009 decisions to the Ohio Supreme Court and includes no documents related to such an appeal.  However, on March 26, 2009, the Ohio Supreme Court issued the following decision, captioned "In re Verdell Starks' application for leave to file a notice of appeal":

On December 31, 2008, this Court found Verdell Starks to be a vexatious litigator under S.Ct.Prac.R. XIV(5)(B).  This Court further ordered that Starks was prohibited from continuing or instituting legal proceedings in this Court without first obtaining leave.  On March 24, 2009, Starks submitted a motion for leave to file an appeal/memorandum in support of jurisdiction.  Upon review of the proffered filing the Court finds it without merit.  Accordingly,

It is ordered by the Court that Starks is denied leave to appeal.

Traverse, Exh. 5.

F.    *Motion for a new trial*

On July 3, 2008, Starks filed in the trial court a motion for a new trial, citing newly discovered evidence as grounds for relief.  The evidence consisted of the affidavit of Finley attesting that he alone committed the Cash Advance robbery.  The parties briefed the motion, and the court conducted an evidentiary hearing on October 23, 2009.  On June 10, 2010, the trial court issued its decision.  It found that Finley's affidavit lacked credibility because it was inconsistent with his previous testimony, Finley was serving a lengthy sentence and had little to lose by confessing to further crimes, he had a long record of dishonesty, much of Finley's testimony in the evidentiary hearing consisted of responses to leading questions by Starks, the style of the affidavit paralleled the writing of Starks, the facts stated in the affidavit were inconsistent with other known facts, Finley exhibited a memory of inconsistent reliability, the testimony in the affidavit was

24

unreasonable, and Finley had failed to admit his commission of the Cash Advance robbery when he confessed to other crimes.  For this reason, the trial court found that Starks failed to demonstrate, as required, that there was a strong probability that the new evidence would change the result if a new trial were granted.  Consequently, the trial court denied Starks' motion.

On July 9, 2010, Starks timely filed a timely notice of appeal of the trial court's denial of his motion for a new trial.  Starks asserted five assignments of error of error in his appellate brief:

ASSIGNMENT OF ERROR ONE:

The Trial Court abused its discretion and violated Appellant's right to due process as guaranteed by the Fifth and Fourteenth Amendment of the United States Constitution when the trial court denied Appellant's Motion For a New Trial Based on Newly Discovered evidence that was exculpatory, including the corroborating existence of another person who has confessed to the crime.

ASSIGNMENT OF ERROR TWO:

The Trial Court abused its discretion when it granted the State's untimely request for an extension of time to respond to Appellant's Crim.R. 33 motion when such extension was precluded by Crim.R. 45(B).

ASSIGNMENT OF ERROR THREE:

The Trial Court abused its discretion by considering and granting the State's Motion For Extension Of Tome [sic] To File Response in the absence of a showing of clear excusable neglect.

ASSIGNMENT OF ERROR FOUR:

The Trial Court abused its discretion by granting the State's motion to extension of time prior to giving the APpellant [sic] an opportunity to respond by local rule denied Appellant his right to due process.

ASSIGNMENT OF ERROR FIVE:

The Trial Court abused its discretion when the Trial Court denied Appellant's

25

request for a motion for new consolidated trial based upon newly discovered evidence.

(Capitalization and punctuation in the original.)  On April 8, 2011, the state appellate court affirmed the judgment of the trial court.

On August 3, 2009, Starks applied in the trial court for leave to file a motion for a new trial with respect to his conviction for the Sunoco robbery.  Starks again cited the affidavit from Finley as grounds for relief.  The trial court granted the motion on May 28, 2010.  Starks filed his motion for a new trial on June 16, 2010.  On October 1, 2010, the trial court denied Starks' motion because Finley's affidavit was not credible and because Finley had not confessed to the Sunoco robbery.

Starks filed a timely notice of appeal of the denial of his motion for a new trial.  In his brief in support of his appeal, Starks asserted two assignments of error:

Assignment of Error One:

The trial court abused its discretion and violated Appellant's right to due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution when the trial court denied appellant's motion for a new trial based on newly discovered evidence as not disclosing a strong probability that it will change the result if a new trial is granted.

Assignment of Error Two:

The trial court abused its discretion and violated appellant's constitutional right as guaranteed by the Fourteenth Amendment of the United States Constitution when the trial court denied appellant's request for a motion for new consolidated trial based upon newly discovered evidence.

On April 8, 2011, the state appellate court affirmed the judgment of the trial court.

Respondent asserts that Starks did not appeal either of the appellate court's April 8, 2011 decision in case nos. CL10-1191 and CL10-1304 to the Ohio Supreme Court and includes no documents related to such an appeal.  However, on May 5, 2011, the

26

Ohio Supreme issued the following decision, captioned "In re Verdell Starks":

> On December 31, 2008, this Court found Verdell Starks to be a vexatious litigator under S.Ct.Prac.R. XIV(5)(B).  This Court further ordered that Starks was prohibited from continuing or instituting legal proceedings in this Court without first obtaining leave.  On April 28, 2011, Starks submitted two motions for leave to file appeals of decisions in court of appeals' case nos. CL10-1191 and CL10-1304.

> Upon review of the proffered filings the Court finds them without merit.  Accordingly, it is ordered by the Court that both of Starks' motions for leave to file and appeal are denied.

Traverse, Exh. 6.

G.  *Federal habeas petition*

On January 26, 2012, Starks filed in this court a petition for a federal writ of

habeas corpus.  Starks asserted thirty-three grounds for relief in his petition:

**Ground One**: The trial court erred by not granting petitioner's Rule 29 motions for judgment of acquittal at both trials because there was insufficient evidence to prove each element of the crimes charged.

**Ground Two**: The trial court erred in overruling petitioner's motion to suppress the witness identification because the process was prejudicially and irreparably tainted by the process, including a second array that was never produced.

**Ground Three**: Petitioner's trial counsel provided ineffective assistance of counsel by failing to pursue discovery and object to improper evidence.

**Ground Four**: The prosecutor made comments during trial and during closing arguments that resulted in an improper comment on the evidence or vouching.

**Ground Five**: The trial court abused its discretion and violated Petitioner's right to due process as guaranteed by the 5th and 14th Amendments of the United Sates Constitution when the trial court denied petitioner's motion for new trial based on newly discovered evidence that was exculpatory, including the corroborating existence of another person who has confessed to the crime.

**Ground Six**: The trial court abused its discretion when it granted the state's untimely request for an extension of time to respond to petitioner's Crim. R. 33 motion when such an extension was precluded by Crim. R. 45(B).

27

**Ground Seven**: The trial court abused its discretion by considering and granting the state's motion for extension of time to file [a] response in the absence of a showing of excusable neglect.

**Ground Eight**: The trial court abused its discretion by granting the state's motion for extension of time prior to giving the petitioner an opportunity to respond by local rule denied [sic] petitioner his right to due process.

**Ground Nine**: The trial court abused its discretion when the trial court denied petitioner's request for new consolidated trial based upon newly discovered evidence.

**Ground Ten**: The trial court abused its discretion and violated petitioner's right to due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution when the trial court denied petitioner's motion for new trial based upon newly discovered evidence as not disclosing a strong probability that it will change the result if a new trial is granted.

**Ground Eleven**: The trial court abused its discretion and violated petitioner's constitutional right as guaranteed by the Fourteenth Amendment of the United States Constitution when the trial court denied petitioner's request for a motion for [a] new, consolidated trial based upon newly discovered evidence.

**Ground Twelve**: The trial court erred and/or abused its discretion to the prejudice of the petitioner by dismissing the petitioner's timely filed petition to vacate and/or set aside sentence as being untimely, in violation of petitioner's right to due process pursuant to R.C. 2953.21; Crim.R. 35[C]; the 14th Amendment of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Thirteen**: The trial court erred and/or abused its discretion to the prejudice of petitioner by considering and granting the state's "second" "untimely" request for summary judgment, when said request was not timely filed pursuant to R.C. 2953.21(D); Civ.R. 15(A), and petitioner had a constitutional right to due process to respond prior to the expiration of the time set forth for response by Local Rules of the Lucas County Common Pleas Court, Gen.R. 5.04(E), that the trial court violated.

**Ground Fourteen**: The trial court erred and/or abused its discretion to the prejudice of petitioner by striking the petitioner's timely filed "amended petition for post-conviction relief" from the record, when petitioner in fact was entitled to amend petition that was not timely responded to by the State of Ohio pursuant to R.C. 2953.21(D), in violation of the petitioner's right to due process pursuant to the 5th and 14th Amendments of the United States Constitution; Article One,

28

Sections 10 and 15 of the Ohio Constitution; R.C. 2953.21(F); and Civ.R. 15(A).

**Ground Fifteen**: The trial court erred and/or abused its discretion to the prejudice of Petitioner by ruling that petitioner's claims were barred by the doctrine of res judicata.

**Ground Sixteen**: The trial court erred and/or abused its discretion to the prejudice of petitioner by failing to conduct and evidentiary hearing on petitioner's timely filed petition for post-conviction relief when petitioner had submitted evidentiary documents consisting sufficient operative facts to warrant a hearing.

**Ground Seventeen**: The trial court erred and/or abused its discretion to the prejudice of the petitioner by dismissing the petitioner's timely filed petition to vacate and/or set aside sentence as being untimely, in violation of petitioner's right to due process pursuant to R.C. 2953.21; Crim. R. 35(C); and the 14th Amendment of the United States Constitution, Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Eighteen**: The trial court erred and/or abused its discretion to the prejudice of petitioner by striking the petitioner's timely filed amended petition for post-conviction relief from the record, when petitioner in fact was entitled to amend [a] petition that was not timely responded to by the State of Ohio pursuant to R.C. 2953.21(D); Crim. R. 35(C); and the 14th Amendment of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution; R.C. 2953.21(F); and Civ. R. 15(A).

**Ground Nineteen**: The trial court erred and/or abused its discretion to the prejudice of the petitioner by failing to provide sufficient findings of fact and conclusions of law with respect to the dismissal of petitioner's timely filed petition for post-conviction relief, in violation of petitioner's right to due process pursuant to R.C. 2953.21; Crim.R. 35(C); the 14th Amendment of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Twenty**: The trial court erred and/or abused its discretion to the prejudice of petitioner by ruling that petitioner's claims were barred by the doctrine of res judicata.

**Ground Twenty-One**: Governmental actions interfered with and prevented petitioner from his right to a fair trial, in violation of petitioner's right to due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution; Section 16, of the Ohio Constitution.

**Ground Twenty-Two**: The trial court erred and/or abused its discretion to the prejudice of petitioner by failing to conduct an evidentiary hearing on petitioner's

29

timely filed petition for post-conviction relief when petitioner had submitted evidentiary documents containing sufficient operative facts to warrant a hearing.

**Ground Twenty-Three**: Petitioner's constitutional rights to due process were violated by appellate counsel's failure to timely perform procedural duties necessary to sufficiently prosecute the petitioner's first appeal as of right, cumulatively amounted to ineffective assistance of counsel, in violation of petitioner's Sixth and Fourteenth Amendment right of the United States Constitution, which is cause for excusing said procedural default as well as prejudice resulting from the errors.

**Ground Twenty-Four**: Petitioner was denied due process of law in violation of the Ohio Rules of Appellate Procedure where appellate counsel refused to invoke the mandatory procedures of App. R. 9(C) and (E), to correct the incomplete transcript of proceedings, in violation of the 6th and 14th Amendment of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Twenty-Five**: The petitioner was denied the effective assistance of appellate counsel, where appellate counsel was deficient for failing to raise ineffective assistance claims concerning trial counsel's failure to present alibi witness for the Sky Bank robbery, in violation of the 6th and 14th Amendments of the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Twenty-Six**: The trial court erred and/or abused its discretion to the prejudice of petitioner when it failed to correct the obvious omissions and/or misstatements, on proper suggestion or its own initiatives, prior to denying the petitioner's timely filed motion for correction or modification of the record, App. R. 9(E).

**Ground Twenty-Seven**: The trial court abused its discretion with its ruling denying petitioner's App. R. 9(E) motion without first conducting an evidentiary hearing, given the fact that there were obviously material omissions and misstatements in the transcript of proceedings that were not due to the fault of the petitioner.

**Ground Twenty-Eight**: The trial court erred and/or abused its discretion to the prejudice of petitioner when it failed to make findings of fact and conclusions of law with respect to its denial of petitioner's motion to supplement the record, which precludes petitioner from making a reasonable appeal and/or prevents the Appellate Court from any meaningful judicial review.

**Ground Twenty-Nine**: The court of appeals erred and/or abused its discretion to

30

the prejudice of petitioner by striking petitioner's App. R. 9(E) motion, "on proper suggestion and/or the Court's Initiative," from the record, when in fact petitioner had a constitutional right to due process which was mandatory pursuant to App. R. 9(E), that was violated pursuant to the provisions of the 14th Amendment of the United States Constitution; Sections 10, Article One, and Section 16, Article One of the Ohio Constitution.

**Ground Thirty**: The court of appeals erred and/or abused its discretion to the prejudice of Petitioner by making erroneous factual determinations prejudicial to the petitioner's right to due process pursuant to App. R. 9(E), and right to appeal, in violation of the petitioner's 4th and 14th Amendment rights of the United States Constitution; Article 10 and 16 of the Ohio Constitution.

**Ground Thirty-One**: The Sixth Appellate District Court erred and/or abused its discretion to the prejudice of petitioner by ruling that the petitioner is not entitled to file a pro se Notice of Appeal from the denial of petitioner's pro se motions in the trial court, when in fact the district court, trial court and the State of Ohio, initially, all entertained said pro se motions originally without any argument of hybrid representation, in violation of petitioner's constitutional right to due process under the Fourteenth Amendment to the United States Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

**Ground Thirty-Two**: The trial court's sentence violated the ex post facto clause of the United States Constitution and thereby petitioner's Sixth Amendment Rights.

**Ground Thirty-Three**: The Ohio Supreme Court abused its discretion and violated petitioner's due process and due course of law as guaranteed by the 14th Amendment of the United States Constitution where said court erroneously declared petitioner a vexatious litigator was based [sic] on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

(Capitalization and punctuation altered from the original.)  Respondent filed an

Answer/Return of Writ on October 31, 2012.  Doc. No. 7.  Starks filed a Traverse on

August 13, 2012.  Doc. No. 11.  Starks filed a Traverse on October 29, 2012.  Doc. No.

31.  Starks moved to withdraw his sixth, seventh, eighth, twelfth, thirteenth, and

seventeenth grounds for relief, and the court granted that motion on January 11, 2013.

Docs. No. 27, 39.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Lucas County, Ohio sentenced Starks.  Starks

filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Lucas County is within this court's geographic jurisdiction.

This court has jurisdiction over Starks' petition.

Respondent argues, however, that the claims in Starks' fourteenth through

twentieth, twenty-second, and twenty-ninth through thirty-first grounds for relief are not

cognizable in federal habeas proceedings.

In grounds fourteen through twenty and in ground twenty-two, Starks claims that

the trial court violated his right to due process by violating or misapplying state

procedural rules in adjudicating Starks' application for post-conviction relief pursuant to

§ 2953.21.  Section 2953.21 is a collateral, post-conviction proceeding.  *See Keener v.*

*Ridenour*, 594 F.2d 581, 589-90 (6th Cir. 1979).  That is, it is not part of a petitioner's

direct appeal of his conviction and sentence.  Claims of procedural errors in adjudicating

applications for post-conviction relief pursuant to § 2953.21 are not cognizable in

habeas proceedings:

32

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because "'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [ in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] . . . is not in any way related to the confinement." Accordingly, we have held repeatedly that "the scope of the writ [ does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration."

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citations omitted). Because Starks' fourteenth through twentieth and twenty-second grounds for relief allege procedural errors in a state collateral proceeding, they are not cognizable upon habeas review.

Starks' twenty-ninth through thirty-first grounds for relief relate to the state appellate court's dismissal of claims related to Starks' attempts to alter or supplement the trial record for use in his direct appeal. Starks was represented by counsel in his direct appeal. Ohio law prohibits hybrid representation on direct appeal. *State v. Ferguson*, 108 Ohio St.3d 451, 466, 844 N.E.2d 806 (2006). The state appellate court found that Starks' *pro se* attempts in the trial court to alter the record for use on appeal and his *pro se* appeals of the trial court's unfavorable decisions related to that record violated Ohio's rule against hybrid representation.

An error of state law may serve as a basis for habeas relief only when the error denied the petitioner fundamental fairness. *Estelle*, 502 U.S. at 67-68; *see also Serra v.*

33

*Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  An error of state law so severe as to deny fundamental fairness offends the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").  An error of state law, however, violates due process only when it offends "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Giles v. Schotten,* 449 F.3d 698, 704 (6th Cir. 2006).

Starks does not explain how the state court's requirement that he use his appellate counsel to adjudicate his claims related to altering the trial record for use on appeal was fundamentally unfair or offended a fundamental principle of justice.  If appellate counsel refused to raise claims related to altering the trial record, then Starks' recourse was a motion pursuant to R. 26(B) for ineffective assistance of appellate counsel.  As Starks fails to explain how the state appellate court's rulings on state law grounds were fundamentally unfair, he does not state a due process claim.  Consequently, Starks' claims in his twenty-ninth though thirty-first grounds for relief are state law claims that are not cognizable in habeas proceedings and should be dismissed.

For the reasons given above, Starks' fourteenth through twentieth, twenty-second, and twenty-ninth through thirty-first grounds for relief are not cognizable in federal habeas proceedings.  These grounds for relief, therefore, should be dismissed.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited

circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Starks's claims involve legal issues that can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Starks has no state remedies available for his claims.  Because no state remedies remain available to him, Starks has exhausted state remedies.

D.      *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a

petitioner fails to present fairly to the highest state court his claims in a federal

constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v.*

*Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court

in the state deprives a federal court hearing a habeas petition of jurisdiction on that

issue.  *See  McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the

court must conduct a four-step analysis to determine whether the petitioner has indeed

defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with the
> rule. . . . Second, the court must decide whether the state courts actually
> enforced the state procedural sanction.  . . . Third, the court must decide whether
> the state procedural forfeiture is an  "adequate and independent" state ground on
> which the state can rely to foreclose review of a federal constitutional claim. . . .
> This question generally will involve an examination of the legitimate state
> interests behind the procedural rule in light of the federal interest in considering
> federal claims. . . . [Fourth, if] the court determines that a state procedural rule
> was not complied with and that the rule was an adequate and independent state
> ground, then the petitioner must demonstrate . . . that there was "cause" for him

36

to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default  also will be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Starks has defaulted his fifth, ninth through eleventh, thirteenth through sixteenth, eighteenth through twenty-second, twenty-sixth through twenty-eighth, and thirty-second grounds for relief.  The court shall examine this contention, grouping the alleged defaults according to the reasons respondent gives in support of the claimed defaults.

> 1.  *Default for alleged failure to appeal state appellate court decisions to the Ohio Supreme Court*

Respondent argues that Starks has procedurally defaulted his fifth, ninth, through eleventh, thirteenth through sixteenth, eighteenth through twenty-second, and thirty-second grounds for relief because he failed to raise these claims in the Ohio Supreme Court after he was denied relief in the state appellate court.  Thus, according to respondent, Starks has defaulted these claims because he has not fairly presented them to the highest court in the state.

Starks responds that he attempted to appeal the respective state appellate court judgments to the Ohio Supreme Court but that the court denied him leave to file an appeal or file a memorandum in support of jurisdiction because the Ohio Supreme Court found that his claims did not meet the threshold of substantiality required for vexatious litigants pursuant to Ohio S. Ct. Prac. R. 15.5(B) ("R. 15(B)").

Rule 15(B) provides in relevant part:

> If a party habitually, persistently, and without reasonable cause engages in frivolous conduct . . . , the Supreme Court may, sua sponte or on motion by a party, find the party to be a vexatious litigator.  If the Supreme Court determines that a party is a vexatious litigator under this rule, the Court may impose filing restrictions on the party.  The restrictions may include prohibiting the party from continuing or instituting legal proceedings in the Supreme Court without first obtaining leave . . . .

A party declared to be a vexatious litigator is not denied access to the Supreme Court. Rather, that party's arguments are screened by the court to determine whether those arguments are frivolous.  *See Mayer v. Bristow*, 91 Ohio St. 3d 3, 740 N.E.2d 656 (2000) (examining the similar statutory rule addressing vexatious practice in lower courts, Ohio Rev. Code § 2323.52 ("§ 2323.52")); *see also Bozsik v. Bradshaw*, 2010 WL 7702230 (N.D. Ohio June 4, 2010) (analyzing § 2323.52).  Before filing a notice of appeal or a memorandum in support of jurisdiction, the party seeking to appeal must first move for leave to file an appeal.  If the court determines that the arguments that the party seeks to make are, indeed, frivolous, the Ohio Supreme Court denies the party leave to file an appeal or file a memorandum in support of jurisdiction.

Respondent's argument that Starks procedurally defaulted these claims because he failed to present them to the Ohio Supreme Court is not well-taken.  The decision to deny a party leave to appeal based upon an earlier decision denominating the party as a vexatious litigator is a decision on the merits, if only to a limited extent.  The object of requiring fair presentation of claims to the highest court in the state is to allow that court, pursuant to federalism and comity, the opportunity to resolve those claims without interference from the federal government.  When a vexatious litigator moves for leave to file an appeal, the litigant necessarily presents the court with the opportunity to render a decision regarding the claims he or she wishes to make.  The motion for leave to file an

38

appeal is denied if the court determines that the litigant's claims are frivolous. This is as much a decision on the merits as an Ohio Supreme Court decision to decline jurisdiction because the appellant's brief fails to present a substantial constitutional question. A decision to decline jurisdiction is accepted as a decision on the merits; a decision to deny leave to appeal should equally be considered a decision on the merits. In either case, the Ohio Supreme Court has been given a fair opportunity to review the proffered claims and, in each case, the court has declined fully to review the merits of those claims.

Moreover, a denial of leave to file an appeal is not the result of a procedural violation. In this case, for instance, Starks has apparently complied with all the procedures imposed on him by Ohio law and by the Ohio Supreme Court. Respondent has not identified any procedural rule that Starks has violated that would constitute a "procedural default."[3]

The only state appellate court decision that Starks failed to appeal to the Ohio Supreme Court was the appellate court's October 5, 2007 decision that Starks could not appeal the trial court's order striking his amended petition until the trial court had ruled on his petitions to vacate and/or set aside sentence. Thus, respondent errs in asserting that Starks failed to appeal any other appellate court decision to the Ohio Supreme Court. For this reason, respondent's contention that Starks has procedurally defaulted

---

[3] It is not clear whether the Ohio Supreme Court retains any record of denials of leave to appeal when the appellant is a vexatious litigator. Consequently, there may be no record in that court which would allow respondent or Starks to document the attempted appeal. Starks presents a decision from the Ohio Supreme Court denying a timely motion for leave to appeal following an appellate court decision in which that claim was denied. Respondent fails to provide documents regarding any of those appeals.

the seventeen grounds for relief described above because he failed to raise these claims in the Ohio Supreme Court is not well-taken.

        2.     *Default on the grounds of res judicata*

Respondent argues that Starks procedurally defaulted his twenty-first ground for relief, that government actions violated Starks' right to a fair trial, because Starks failed to raise the claim at his first opportunity to do so. Starks first asserted this claim in his R. 26(B) to reopen his direct appeal on the ground of ineffective assistance of counsel. The state appellate court found that the claim was unrelated to any claim of ineffective assistance of counsel and was barred by *res judicata*, since it could have been raised on direct appeal. Although Starks appealed this decision to the Ohio Supreme Court, that court dismissed his appeal without opinion as involving no substantial constitutional question. As the Ohio Supreme Court did not issue a decision in upholding the judgment of the state appellate court, this court must assume that the Ohio Supreme Court rejected Starks' claim on the ground of *res judicata*. *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The rule that *res judicata* bars a petitioner from asserting a claim that could have been raised on direct appeal in a subsequent proceeding is a procedural sanction actually enforced by the State of Ohio and is an adequate and independent ground which forecloses review of a federal constitutional claim. *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Thus, there was a state procedural rule applicable to Starks' twenty-first claim, Starks violated

40

that rule, the state appellate court and Ohio Supreme Court enforced the sanction, and

the rule is an adequate and independent state ground on which the state can rely to

foreclose review of a federal constitutional claim.  Consequently, Starks has defaulted

his twenty-first ground for relief.

> 3.      *Default on the grounds of hybrid representation*

Respondent contends that Starks' twenty-sixth through twenty-eighth grounds for

relief are procedurally defaulted.  These grounds for relief are as follows:

> **Ground Twenty-Six**: The trial court erred and/or abused its discretion to the
> prejudice of petitioner when it failed to correct the obvious omissions and/or
> misstatements, on proper suggestion or its own initiatives, prior to denying the
> petitioner's timely filed motion for correction or modification of the record, App. R.
> 9(E).

> **Ground Twenty-Seven**: The trial court abused its discretion with its ruling
> denying petitioner's App. R. 9(E) motion without first conducting an evidentiary
> hearing, given the fact that there were obviously material omissions and
> misstatements in the transcript of proceedings that were not due to the fault of
> the petitioner.

> **Ground Twenty-Eight**: The trial court erred and/or abused its discretion to the
> prejudice of petitioner when it failed to make findings of fact and conclusions of
> law with respect to its denial of petitioner's motion to supplement the record,
> which precludes petitioner from making a reasonable appeal and/or prevents the
> Appellate Court from any meaningful judicial review.

Starks attempted to raise these grounds for relief *pro se* on appeal when he was

already represented by an attorney.  Because such hybrid representation is not

permitted in Ohio, respondent concludes, those claims have been procedurally

defaulted.

Starks raised his twenty-sixth and twenty-seventh, and twenty-eighth grounds for

relief in the state appellate court during his appeal of the trial court's May 29, 2007

ruling denying his motion to supplement the record.  He raised the claims in a *pro se*

41

appellate motion.  The state appellate court denied his *pro se* motion because Starks

was represented by an attorney and had no right to hybrid representation.  Ohio

regularly enforces its rule that parties may not engage in hybrid representation.[4]  *See,*

*e.g., State v. Tenace*, 109 Ohio St. 3d 451, 849 N.E.2d 1 (2006); *State v. Minkner*, 194

Ohio App. 3d 694, 957 N.E.2d 829 (June 24, 2011); *State v. Pilgrim*, 184 Ohio App. 3d

675, 922 N.E.2d 248 (2009); *State v. Martin*, 103 Ohio St. 3d 385, 816 N.E.2d 227

(2004); *State v. Taylor*, 98 Ohio St. 3d 27, 781 N.E.2d 72 (2002); *State v. Cassano*, 96

Ohio St. 3d 94, 772 N.E.2d 81 (2002); *State v. Prince*, 2012 WL 3893768 (Ohio App.

Sept. 10, 2012); *State v. Capers*, 2011 WL 1992034 (Ohio App. May 23, 2011); *State v.*

*Perry*, 2011 WL 1848889 (Ohio App. May 11, 2011); *State v. Edmonds*, 2011 WL

946407 (Ohio App. March 18, 2011); *State v. Smith*, 2010 WL 3722257 (Ohio App.

Sept. 20, 2010); *State v. Spung*, 2010 WL 2751228 (Ohio App. July 9, 2010); *State v.*

*Childs*, 2010 WL 1660444 (Ohio App. April 26, 2010); *State v. Hill*, 2010 WL 1510199

(Ohio App. April 15, 2010); *State v. Rhodes*, 2010 WL 1100068 (Ohio App. March 25,

2010); *State v. Brime*, 2009 WL 4809645 (Ohio App. Dec. 15, 2009); *State v. Rice*,

2009 WL 3255249 (Ohio App. Oct. 13, 2009); *State v. Bonner*, 2009 WL 1263101 (Ohio

App. May 8, 2009); *State v. Clark*, 2008 WL 4456996 (Ohio App. Oct. 06, 2008); *State*

*v. Kendrick*, 2007 WL 3409300 (Ohio App. Nov. 16, 2007); *State v. Gaskins*, 2007 WL

2296454 (Ohio App. Aug. 13, 2007); *State v. Ahmed*, 2006 WL 3849862 (Ohio App.

Dec. 28, 2006); *State v. West*, 2006 WL 3159354 (Ohio App. Nov. 6, 2006); *State v.*

---

[4]  A few Ohio courts use the term "hybrid representation" to refer to a *pro se* litigant
who has an attorney as a legal advisor.  *See, e.g., State v. Bloodworth*, 2013 WL 357100
(Ohio App. Jan. 30, 2013).  This practice is permitted in Ohio, but it is not what is meant by
"hybrid representation" in this opinion or in the other Ohio opinions cited here.

*Davis*, 2006 WL 2780177 (Ohio App. Sept. 28, 2006); *State v. Greenleaf*, 2006 WL
2390253 (Ohio App. Aug. 18, 2006); *State v. Haines*, 2005 WL 2789065 (Ohio App.
Oct. 27, 2005); *State v. Bell*, 2005 WL 1163257 (Ohio App. May 16, 2005); *State v.
Farmer*, 2005 WL 1092370 (Ohio App. May 9, 2005); and *State v. Sweitzer*, 2000 WL
973416 (Ohio App. July 14, 2000).  The Sixth Circuit has found a similar statute in
Tennessee to be an adequate and independent state ground to foreclose habeas
review.  *Hill v. Carlton*, 2010 WL 3272800 (6th Cir. Aug. 19, 2010).[5]  Consequently,
Ohio's rule against hybrid representation is an adequate and independent state ground
sufficient to foreclose habeas review, and that rule was enforced against Starks.  Starks
has, therefore, procedurally defaulted his twenty-sixth through twenty-eighth grounds for
relief.

Starks asserts ineffective assistance of appellate counsel as cause for his
default.  Ineffective assistance of counsel may constitute cause for failing to properly
present a claim before a state court.  *See Williams v. Anderson*, 460 F.3d 789, 800 (6th
Cir. 2006).  Counsel has been ineffective if his or her conduct falls below an objective
standard of reasonableness and if there is a reasonable probability that but counsel's
ineffective performance the outcome of the proceedings would have been different.
*Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984).  Ineffective assistance of
counsel may only serve as cause for a procedural default, however, if the ineffective

---

[5] Starks asserts that respondent and the Ohio courts misread *McKaskle v. Wiggins*,
465 U.S. 168 (1984), as prohibiting hybrid representation.  Starks misses the point.
Whether *McKaskie* prohibits hybrid representation is irrelevant.  All that is relevant is that
the State of Ohio prohibits it, and such a prohibition does not violate federal law or the
federal constitution

assistance of counsel claim itself was not procedurally defaulted or unless cause and

prejudice for such default exists.  *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

Starks asserted three claims of ineffective assistance of appellate counsel in his

R. 26(b) application to reopen his appeal:

> Appellant was denied due process of law in violation of the Ohio Rules of
> Appellate Procedures [sic] where appellate counsel refused to invoke the
> mandatory procedures of App. R. 9(C) and (E) to correct the incomplete
> transcript of proceedings in violation of the 6th and 14th Amendment rights under
> the United States Constitution; Article One, Sections 10 & 16 of the Ohio
> Constitution.

> The appellant was denied the effective assistance of appellate counsel where
> appellate counsel was deficient for failing to raise ineffective assistance claims
> concerning trial counsel's failure to present alibi witness [sic] for the Sky Bank
> robbery, in violation of the 6th and 14th Amendment to the United States
> Constitution; Article One, Sections 10 and 16 of the Ohio Constitution.

> Counsel for the State of Ohio deprived appellant of his constitutional right to due
> process under the Fourteenth Amendment of the United States Constitution;
> Article One, Sectoins [sic] 10 & 16 of the Ohio Constitution, where the
> prosecution failed to produce exculpatory material evidence that was specifically
> requested by the appellant, prior to the conclusion of appellant's trial, pursuant to
> Crim. R. 16(B)(1), (C), (D); and Ohio Rules of Evidence 1001 & 1002.

Respondent states that these claims were properly presented to the Ohio courts and

were not procedurally defaulted.  Starks' first claim of ineffective assistance of counsel

addresses the failure of appellate counsel to raise Starks' claims regarding the trial

court's alleged errors in denying Starks leave to correct the record.  Thus, if Starks'

appellate counsel was ineffective in failing to raise these claims, that ineffective

assistance may serve as cause for Starks' default of those claims by raising them

himself when appellate counsel did not do so.

The standard enunciated in *Strickland* is applicable to claims of ineffective

assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir.

44

1985).  Starks must demonstrate, therefore, that his appellate counsel's performance fell below an objective standard of "reasonably effective assistance" according to prevailing professional norms.  *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  In doing so, he "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  Starks must also demonstrate that he was prejudiced as a result of appellate counsel's deficient performance.  In reviewing this contention, this court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

In the present case, Starks does not demonstrate that appellate counsel was ineffective for failing to raise claims that the trial court erred by not allowing Starks to supplement the record or make findings of fact and conclusions of law in issuing that decision.  In denying Starks' motions to correct and supplement the record, the trial court found that Starks' allegations regarding the testimony of Hall, Bowers, Maunz, and Andrea Starks were inaccurate.  A state court's findings of fact are presumed correct unless rebutted by clear and convincing evidence.  *Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir. 2007).  Starks fails to offer any competent, admissible evidence, other than his own self-serving affidavit,[6] that the trial court's finding was erroneous.  Given the

---

[6] *See* Supplemental Affidavit, Traverse, Exh. 22.  In his affidavit, Starks allegedly corrects errors in the transcripts of the testimony of various witnesses.  He bases this process on his notes and memory.  Supplemental Affidavit at 3.  Starks' affidavit has little weight as evidence.

45

Case: 3:12-cv-00191-JG  Doc #: 40  Filed:  04/02/13  46 of 76.  PageID #: 5170


deference that this court must show to the factual findings of state courts, this court must assume, therefore, that the trial transcript was correct and that Stark erred in contending that it was erroneous or incomplete.  Given the reasonable finding that the trial transcript was correct, the performance of Starks' appellate counsel was not ineffective by his refusal to challenge the accuracy of that trial transcript pursuant to Ohio App. R. 9.  Consequently, ineffective assistance of counsel cannot serve as cause to excuse Starks' default of his twenty-sixth and twenty-seventh grounds for relief, alleging that the trial court erred by denying Starks' motions to correct or supplement the record or hold an evidentiary hearing on the matter.

Starks' twenty-eighth ground for relief asserts that the trial court erred by failing to issue findings of fact and conclusions of law regarding its denial of Starks' motions to correct or supplement the record, thus denying Starks meaningful review on appeal.[7] That was not one of the grounds for ineffective assistance of appellate counsel that Stark asserted in his 26(B) motion.  As Starks has not presented this ground for ineffective assistance of appellate counsel to the state courts, it may not serve as cause to excuse his default of his twenty-eighth ground for relief.[8]

Starks procedurally defaulted his twenty-sixth, twenty-seventh, and twenty-eighth grounds for relief by impermissibly raising them through hybrid representation.

_____

[7]  Respondent errs in his brief by stating that Starks asserted in his application pursuant to R. 26(B) that appellate counsel was ineffective for failing to raise this claim.

[8]  Even if Starks had presented to the state courts a claim that appellate counsel was ineffective for failing  to assert that the trial court erred by not issuing findings of fact and conclusions of law, such a claim would have been fruitless because the trial court determined the record was correct.  Thus, Starks could not show that he was prejudiced by this alleged error and could not demonstrate ineffective assistance of appellate counsel.

Furthermore, a claim of ineffective assistance of appellate counsel may not serve as cause to excuse these procedural defaults.

>    d.    Assertion of actual innocence to excuse Starks' procedural defaults

In addition to arguing cause and prejudice for his default of his twenty-sixth through twenty-eighth grounds for relief, Starks also argues that his procedural defaults should be excused because enforcing the procedural rules would result in a manifest miscarriage of justice due to his actual innocence of the crimes of which he was convicted.

Innocence is not a ground for habeas relief, although a claim of innocence allows a federal court to review the merits of an otherwise procedurally-defaulted claim.  *See Herrera v. Collins*, 506 U.S. 390 (1993) (holding that a claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief); *Murray v. Carrier*, 477 U.S. 478 (1986) (holding that in an extraordinary case, where constitutional violation has probably resulted in conviction of one who is actually innocent, federal habeas court may grant writ even in absence of showing of cause for procedural default).  "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  A petitioner must advance new evidence not presented at trial to support a claim of actual innocence, and the habeas court must determine "how reasonable jurors would react to the overall, newly supplemented record."  *Id.* at 538.  A habeas court's determination as to whether a reasonable jury would have found the petitioner guilty should be based

47

both on the new evidence and on the evidence presented at trial.  *House*, 547 U.S. at 537-38.  In addition, the standard permits review only in the extraordinary case:  "'[I]n the vast majority of cases, claims of actual innocence are rarely successful.'"  *Id.* at 538 (quoting *Schlup*, 513 U.S. at 324).  If the new evidence so requires, the court may include in its deliberations assessments of the credibility of witnesses in determining whether a reasonable jury would have convicted the petitioner.  *House*, 547 U.S. at 538-39.  Finally, the Supreme Court has not created an exception, when considering claims of actual innocence, to the rule that this court must defer to the factual findings of a state court unless those findings were unreasonable in light of the evidence before the state court.  28 U.S.C. § 2254(d).

Starks bases his argument that he was wrongly convicted on four sets of alleged facts:  (1) the transcripts of his trial and hearings are inaccurate; (2) the witness identifications of him were unduly suggestive; (3) officers in charge of the investigation and in charge of conducting the identifications perjured themselves; and (4) another individual has confessed to committing at least two of the crimes.  The court shall examine each of these allegations.

a.    *Alleged inaccuracy of hearing and trial transcripts*

With respect to Starks' claim that the trial and hearing transcripts are inaccurate, Starks has been asserting this claim since the beginning of the appeals process.  He has never advanced any evidence to support that claim other than his own affidavits, allegedly based on his trial notes and recollection.  *See* Affidavit of Verity, attached to Application to Re-Open Appeal Pursuant to Appellate Rule 26, Answer, Exh. 91; Supplemental Affidavit, Traverse, Exh. 22.  When he presented this evidence to the

48

state trial court, the  trial court rejected this evidence and found that the trial and hearing transcripts were accurate.  This court must defer to the state trial court's finding that the transcripts are accurate unless Scott can demonstrate that this factual finding was unreasonable based on the evidence presented to that court.

The trial court's rejection of Starks' self-serving affidavits and that court's subsequent finding that the certified transcripts were accurate was entirely reasonable. Consequently, this court must defer to the trial court's conclusion that the trial and hearing transcripts are accurate, and Starks' contention to the contrary is not well-taken.

> b.    *Alleged undue suggestiveness of the witness identifications and alleged perjury*

Starks contends that the witness identifications of him were obtained by unduly suggestive means and that an officer in charge of some of the identifications, Detective Tetuan, perjured himself at trial.  The erroneous identifications and Tetuan's perjury, according to Starks, resulted in the conviction of an innocent defendant.  Starks claims that the witness identifications of him were unreliable because of the procedures by which they were obtained.  This claim includes two sub-claims:  (1) that the out-of-court identifications of Starks by means of photo arrays were so unduly suggestive that they resulted in the misidentification of Starks as the criminal and (2) that two in-court identifications of Starks was tainted by an encounter between the witnesses and Starks before a suppression while Starks was wearing prison garb and secured by chains.

The trial court first examined these claims after a series of suppression hearings at which eyewitnesses Victoria Hall ("Hall"), Gwen Bowers ("Bowers"), and Laura Maunz ("Maunz") testified, as did two detectives involved in obtaining the identifications,

Detective Kermit Quinn ("Quinn") and Tetuan.  After hearing this testimony, the trial court correctly cited the law regarding out-of-court and in-court identifications.  It cited *Simmons v. United States*, 390 U.S. 397 (1980), for the proposition that the proper test of admissibility of an out-of-court identification is whether the allegedly suggestive procedures are substantially likely to result in a misidentification under the totality of the circumstances.  Transcript of Proceedings, July 25, 2005, ("July Tr."), Answer, attachment 15, pp. 42-43.  The trial court also cited *Manson v. Braithwaite*, 432 U.S. 98 (1977), and *Neil v. Biggers*, 409 U.S. 188 (1972), for the factors a court should consider in determining whether an identification was reliable under the totality of the circumstances.  July Tr. at 43-44. As regards in-court identifications, the trial court did not cite particular cases, but it correctly stated that the key issue in determining whether an in-court identification should be permitted despite an out-of-court incident that might have prejudiced the witness is whether the in-court witness identification has an independent basis not tainted by the out-of-court incident.  July Tr. at 44-45; *see United States v. Wade*, 388 U.S. 218, 240 (1967).

Having correctly stated the law, the trial court then failed to apply that law.  With respect to the out-of-court identifications, the trial court held that there was no evidence that the procedures that the detectives used violated Starks' due process rights and held that the arrays were "fair."  Tr. at 45-46.  The court also found that because there had been no due process violation in the witnesses' out-of-court glimpses of Starks in prison garb and chains, there was no basis for finding a due process violation in permitting the witnesses to testify at trial.  July Tr. at 46-47.  The trial court then denied the motion to suppress the identification testimony.  Thus, the court failed to consider

either whether the allegedly suggestive procedures were substantially likely to result in a misidentification under the totality of the circumstances or whether the in-court witness identification had an independent basis not tainted by the out-of-court incident.

Starks next raised his claims regarding the unreliability of the eyewitness identifications in his first direct appeal.  The appellate court hearing that appeal wrote the following in rejecting his claim:

> {¶ 26} Appellant maintains that the witness identification of him was tainted by the presentation of multiple photo arrays, because one of the witnesses picked someone else out of an earlier array and that a police statement that an arrest had been made unwarrantedly suggested that the individual sought would be in the array.  Appellant also asserts that, because he was seen in jail garb by two of the witnesses at the suppression hearing, this tainted their subsequent in-court identification of him and should not have been permitted.

> {¶ 27} In support of his position, appellant cites *Neil v. Biggers* (1972), 409 U.S. 188, and *State v. Lathan* (1972), 30 Ohio St.2d 92.  *Biggers* involved a police show up of a suspect to a rape victim; *Lathan* was a robbery suspect denied counsel before being identified in a police lineup.

> {¶ 28} In *Lathan,* the Supreme Court of Ohio held, at paragraph one of the syllabus, that even when a "critical pretrial confrontation" was illegal, a subsequent in-court identification was proper, " * * * unless it can be established by clear and convincing evidence that such in court identification had an independent origin or that error in its admission was harmless."  In determining whether identification had an independent origin we are directed to view the totality of the circumstances.  *Id.* at paragraph two of the syllabus. Only if such circumstances reveal " * * * that the witness' opportunity at the time of the crime to observe her attacker was meager, and the circumstances surrounding a later improper 'police confrontation' between the witness and the suspect were so highly suggestive as to the identity of the suspect as to create a grave opportunity for a mistaken identification * * * " should such identification be excluded. *Id.* at paragraph three of the syllabus.

> {¶ 29} *Biggers* too emphasizes examination of all the circumstances, including the witness' opportunity to view and observe the perpetrator.  The case also suggests that consideration should be given to the degree of attention the witness employed when observing the subject, the accuracy of the witness' description, the level of the witness' certainty in identification and the length of time between the crime and the confrontation.  *Biggers* at 200.

{¶ 30} *Biggers* and *Lathan* apply most directly to the chance view of appellant in jail garb by witnesses waiting to testify at the suppression hearing.  Appellant's counsel brought the incident to the court's attention and the court interviewed the witnesses.  Most notable during the interviews was the testimony of one of the witnesses who was startled to see appellant being brought down the hall, because she immediately recognized him as the man who robbed her.

{¶ 31} In this matter, given the opportunity of the witnesses to view appellant during the robberies, the brevity of time between the crime and identification and the certitude of the witnesses in their identification of appellant before the incident, we cannot find error in the court's denial of a motion to suppress on the grounds of an inappropriate sighting.

{¶ 32} With respect to the photo array identification, witness identification at trial following a pretrial identification by photograph will be set aside, " * * * only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States* (1968), 390 U.S. 377, 384.

{¶ 33} In this matter, whether or not witnesses were shown more than one array is immaterial.  The testimony of the police and the witnesses established that there was no attempt to suggest a choice out of the six options on each array.  That the witnesses did not choose anyone from prior arrays only reinforces their certainty of appellant.  Even though one witness believed one or two of the earlier pictures were "possibles," the same witness later conclusively identified appellant from the photo array and at trial.  A police statement that the picture of a suspect was among those in the array was not impermissibly suggestive. It seems not unreasonable for a witness to assume that any time police show a photo array, one of the pictures there is of an individual of police interest.  Moreover, the descriptions of the criminal given by all of the witnesses materially matched the appearance of appellant.

{¶ 34} Given this, we cannot say the trial court erred in denying appellant's motion to suppress.

*Starks*, 2007 WL 2745360 at *3-*4.

Whether an identification procedure is unduly suggestive is a mixed question of

law and fact.  *Sumner v. Mata*, 455 U.S. 591, 597 (1982).  Consequently, the standard

this court must apply in deciding whether it should defer to the determinations of a state

court regarding witness identifications is whether the court correctly identified the

correct legal principle and reasonably applied that law to the facts.  *Williams v. Taylor*, 529 U.S. 362, 384-90 (2000).

With respect to Starks' claim that the identification procedures were unduly suggestive, although the trial court failed to apply the law properly to the facts, the state appellate court's decision corrected the trial court's error.  The state appellate court's statement of the law is substantially correct.  The appellate court considered Starks' arguments regarding the witnesses' inadvertent glimpse of Starks prior to the suppression hearing, inconsistencies in testimony, the indeterminate number of arrays shown to various witnesses, the comment to a witness that one of the persons in an array had been arrested, the possible corrupting influence of news coverage, and other issues before deciding that, under the totality of the circumstances, the identification procedures were not unduly suggestive.  This court must defer to this finding unless Starks demonstrates that the state appellate court's determination was unreasonable given the record before it.

Starks offers no evidence in support of his contention that detectives made impermissible suggestions to witnesses except to note that some witnesses did not identify him in a first photo array but later identified him in a second array.  He also points to inconsistencies in witnesses' testimony which indicate, according to Starks, improper coaching.  In addition, he points to inconsistencies in testimony by Bowers, Quinn, and Tetuan from which Starks construes both improper coaching and perjury. These inconsistencies include the number of arrays shown Bowers, where she viewed those arrays, and which detectives administered the arrays. Starks' arguments regarding perjury based on alleged discrepancies between the testimony of Tetuan and

53

the testimony of Bowers and Quinn were not presented to the appellate state court. Thus, this court must consider whether a reasonable jury would have found Starks guilty, basing its determination on the evidence presented at trial, on the factual findings of the state courts (unless Starks shows by clear and convincing evidence that those findings were unreasonable), and on the on the new evidence not presented to the state courts.

Contradictions in witnesses' testimony do not necessarily indicate a prejudicial process in obtaining that testimony or perjury. Witnesses may contradict themselves or one another. Such contradictions may be the result of faulty memory or of an intent to deceive. It is the job of cross-examination to point out such contradictions and, if necessary, require the witness to explain those contradictions. On the basis of testimony in response to cross-examination, the jury may determine a witness's credibility and weigh that witness's testimony accordingly.

In the present case, the state appellate court determined that the inconsistencies in witnesses' testimony, the offering of multiple arrays, and witnesses' glimpse of Starks prior to the suppression hearing did not result in unduly suggestive identifications under the totality of the circumstances. Starks offers no evidence or arguments to support a conclusion this determination was unreasonable.

In addition, this court also finds that the inconsistencies between Bowers', Quinn's, and Tetuan's testimony do not justify the conclusion that Tetuan committed perjury.[9] Bowers, Quinn, and Tetuan testified about events occurring six to nine

[9] Starks did not present to the state courts his claim that Tetuan committed perjury. Thus, this court must consider the question of whether Tetuan perjured himself *de novo*.

months' earlier.  It is unsurprising that their testimony differed from one another.  Given

the variety of reasons for disparate witness testimony months after the events described

in that testimony, there is insufficient evidence to require the conclusion that Detective

Tetuan perjured himself or conducted an impermissibly suggestive array.

Finally, Starks alleges that the various photo arrays were unduly suggestive

because the individuals presented in the arrays differed considerably from Starks and

from witnesses' descriptions of the offenders.  The court has independently reviewed

the three photo arrays in color that were used in identifying Starks.  *See* Respondent's

Notice of Filing of Photo Arrays, Doc. No. 34.  The arrays, in fact, present individuals

resembling Starks and do not unduly suggest Starks as the "correct" choice.

<p style="text-align:center;"><em>c.</em>    <em>Alleged innocence supported by the confession of Finley</em></p>

Finally, Starks argues that the confession of another individual, Finley, proves

that he is innocent.  Starks appended Finley's affidavit, in which Finley confessed to the

Cash Advance robbery, to his application for leave to move for a new trial.  *See* Affidavit

of Robert Earl Finley, appended to Application for Leave to File a Motion for a New Trial

on Account of "Newly Discovered Evidence," Answer, Exh. 88.[10]  The trial court granted

Starks' application, and Starks filed a motion for a new trial.  The parties briefed the

motion, and the court held an evidentiary hearing on October 23, 2009.  *See* Answer,

Exhs. 127; 128; 129; and 132, appendix, "Transcript of Evidentiary Hearing".  The court

denied the motion.  Opinion and Judgment Entry, Answer, Exh. 30.  In denying the

motion, the trial court found that Finley's affidavit lacked credibility because it was

---

[10]  Starks also presented the affidavit and testimony of Dennison Bower, III that he
had heard Finley confess to the Cash Advance robbery.

inconsistent with his previous testimony, Finley was serving a lengthy sentence and had little to lose by confessing to further crimes, he had a long record of dishonesty, much of his testimony at the hearing consisted of responses to leading questions by Starks, the style of the affidavit paralleled the writing of Starks, the facts stated in the affidavit were inconsistent with other known facts, Finley exhibited a memory of inconsistent reliability, the testimony in the affidavit was unreasonable, and Finley had failed to admit his commission of the Cash Advance robbery when he confessed to other crimes.

The court has examined Finley's affidavit, the briefs for and against the motion for a new trial, the transcript of the evidentiary hearing, and the trial's court opinion in the matter.  The trial court's opinion that Finley's affidavit lacked credibility is consistent with the facts in the record and reasonable given those facts.  This court must, therefore, defer to that opinion.  Consequently, Finley's affidavit is without significant weight and offers little or no support for Starks' claim that Starks is actually innocent.

Given all of the evidence presented at trial, the state courts' conclusions regarding the new evidence presented to them, and the new evidence presented for the first time in this court, Starks has failed top show that it is more likely than not that no reasonable juror would have found Starks guilty beyond a reasonable doubt.  At trial, eyewitnesses positively and firmly identified Starks as the perpetrator of the four robberies of which he was accused; the state presented a videotape of the Sky Bank robbery; an examination of the videotape showed that the robber had a piece of paper in his hand that he did not take with him when he left; a paper with Starks' wife's name on it was found where Starks had leaped over a counter during the Sky Bank robbery, although his wife was not a customer of the bank; and a federal agent testified that

Starks confessed to the Sky Bank robbery.  All of the arguments that Starks presented in state court in support of his innocence have been rejected by the state courts hearing them.  Those rejections were based on the correct identification of the relevant legal principles and reasonable application of that law to the facts.  The evidence that Starks presents here for the first time, consisting of inconsistencies in the record supposedly demonstrating perjury by Tetuan and the inadequacy of the photo arrays, is unavailing.

For the reasons given above, Starks has failed to demonstrate a credible claim of actual innocence.  Thus, Starks' default of his twenty-first and twenty-sixth through twenty-eighth grounds for relief should not be excused, and these grounds for relief should be dismissed.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the

Supreme Court, not its dicta, and the law must be clearly established at the time of the

petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of

federal law only if the deciding court correctly identifies the legal principle at issue and

unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722,

729-31 (6th Cir. 2001).  A state court's factual determinations are presumed correct and

are rebuttable only by clear and convincing evidence that the state court based its

decision on an unreasonable determination of the facts.  *Schriro v. Landrigan*, 550 U.S.

465, 473–74 (2007).  The court will examine Starks' remaining grounds for relief using

the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:  Whether the trial court erred by not granting Starks' motion for
        judgment of acquittal*

Starks contends in his first ground for relief that the trial court erred by not

58

granting his Ohio Crim. R. 29 motions for judgment of acquittal at both trials because there was insufficient evidence to prove each element of the crimes charged.  As noted earlier, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  However, although Starks captions his case merely as a violation of Ohio Crim. R. 29, his arguments and citations make clear that he is also arguing that the evidence presented against him at trial was constitutionally insufficient to support a conviction, citing *Jackson v. Virginia*, 443 U.S. 307 (1979), for that proposition.  Respondent denies that the evidence introduced at trial against Starks was constitutionally insufficient.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).

As described earlier, Starks was implicated in each robbery, *inter alia*, by

59

eyewitness identification[11] and by a piece of paper dropped at the scene of the Sky Bank robbery.  A federal agent also testified that Starks confessed to the Star Bank robbery.  Whether the eyewitness testimony was credible was a matter for the jury.  Clearly, the jury determined the witnesses against Starks to be credible, and it determined that Andrea Starks, Starks' wife and ostensible alibi witness, was not credible.  It is beyond the authority of this court to disturb these determinations.

Eyewitness testimony alone is constitutionally sufficient to sustain a conviction. *See, e.g., Simpson v. Lazaroff*, 1999 WL 196541, at *1 (6th Cir. March 22, 1999). Eyewitness identification supported Starks' conviction for each robbery.  Consequently, Starks' assertion that the evidence was insufficient to support his conviction is not well-taken.

B.      *Ground two:  The trial court erred in overruling Starks' motion to suppress, thus violating Starks right to due process*

In his second ground for relief, Starks argues that the trial court erred in overruling his motion to suppress the witness identifications because the process by which they were obtained was unconstitutionally prejudicial and because the state failed to produce the second array used in the identifications.  According to Starks, the identifications were tainted because they were improperly suggested by the officers administering the photographic arrays and because the witnesses saw Starks briefly before the suppression hearing.  Respondent denies that the trial court erred in refusing

---

[11]  Starks again argues that the eyewitness testimony was improperly solicited by the state and questions the reliability of the witnesses.  As previously discussed in the "actual innocence" section of this report and recommendation, these arguments are without merit

to suppress the eyewitness identifications.

The procedure by which an identification was obtained, even if that procedure was unnecessarily suggestive, is not the sole determinant of whether admission of that evidence violates due process.  Rather, a court asked to suppress evidence obtained by an allegedly suggestive process must consider the reliability of that evidence under the totality of the circumstances:

> [R]eliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

As previously discussed, Starks has failed to establish that the trial court erred in determining that the identification procedures used were not unduly suggestive.  Starks also fails to establish that the state appellate court's opinion supporting that determination was contrary to a holding of the Supreme Court or was an unreasonable application of such a holding to the facts of Starks' case.  Consequently, Starks fails to demonstrate that he suffered a constitutional injury when the trial court declined to suppress the eyewitness identifications of him.  For these reasons, Starks' second ground for relief should be dismissed as without merit.

C.    *Ground three:  Trial counsel rendered ineffective assistance by failing to pursue discovery and failing to object to improper evidence*

Starks contends in his third ground for relief that his trial counsel rendered ineffective assistance by (1) failing to pursue discovery by not aggressively seeking the

61

videotape of the Sky band robbery; (2) by failing to object to the prosecutor's comments about Starks' exercise of his Fifth Amendment right not to testify; and (3) by failing to object to the comment of FBI agent Kyle Fulmer ("Fulmer") that Starks had been arrested on outstanding warrants.  Respondent denies that trial counsel rendered ineffective assistance.

A petitioner claiming ineffective assistance of counsel must demonstrate (1) assistance below an objective standard of "reasonably effective assistance" and (2) prejudice resulting from counsel's deficient performance.  In Starks' case, a claim of ineffective assistance is only available with respect to the Sky Bank robbery.  Starks represented himself against all charges except those related to the Sky Bank robbery.  Thus, there can be no viable claim of ineffective assistance of counsel with respect to the convictions stemming from the other three robberies.  "[A] defendant cannot waive his right to counsel and then complain about the quality of his own defense."  *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2008).

Starks' claims that trial counsel was ineffective for failing aggressively to pursue the Sky Bank videotape or object to the testimony that he had been arrested on outstanding warrants was examined during direct appeal.  The state appellate court wrote the following with respect to those claims:

> The . . . testimony he relates that should have been objected to was a police witness' reference to him having been arrested on outstanding warrants.  "A failure to object to damaging testimony may indicate no more than that counsel wishes not to draw attention to such testimony.  Absent evidence to the contrary, we will presume this tactic to be trial strategy."  *State v. Hickle,* 6th Dist. No. OT-03-034, 2004-Ohio-5250, ¶ 46.

> {¶ 41} With respect to discovery, appellant's complaints are directed to vaunted attempts to obtain a security camera tape from the bank robbery.  Still pictures

were produced, but the tape itself was not produced until a week before the trial. This occurred only after appellant's trial counsel filed a motion to compel. Apparently, the tape had been kept in the possession of bank security officers.

{¶ 42} The state responds that trial counsel was afforded open file discovery and that the location of the missing tape was not known to the prosecution or police until just before it was produced.

{¶ 43} In our view, counsel filed a motion to compel discovery, as he should have. Thus, his conduct was not deficient.  Moreover, no prejudice occurred to appellant from this delay.

*Starks*, 2007 WL 2745360 at *5.

Starks does not respond directly to the state appellate court's conclusions. Rather, Starks claims that the still pictures produced prior to the videotape did not match the videotape.  Starks then claims that counsel was ineffective for failing to object to the admission of both the still pictures and the videotape.  Starks, however, provides no evidence to support his claim that the still pictures and the videotape contradicted each other.  Moreover, if they *did* contradict one another, a reasonable trial strategy would include the admission of both as evidence to suggest a lack of trustworthiness on the part of the state.

Starks' assertion that the prosecutor improperly commented on his exercise of his right to remain silent is factually wrong.  The section of closing argument referenced by Stark reads as follows:

Anyone charged with an offense in the State of Ohio or anywhere in the United States has a right to a jury trial.  He may not have the right to a defense, but you have the right to a jury trial before you're convicted.  It's a constitutional right.
The defendant chose to exercise his constitutional right in this matter. That's his call.  That's fine.  We don't make any further judgments other than that. But look at the evidence.  The evidence is[,] this is the man that did it.

Transcript of Proceedings, August 29, 2005, Answer, Appendix 17, p. 304.  The plain

reading of the prosecutor's remarks is that he commented on Stark's exercise of his right to a jury trial.  Nowhere does the prosecutor make any reference to Starks' remaining silent.  Thus, Starks' claim that the prosecutor improperly commented on Starks' exercise of his right to remain silent is simply wrong.  Starks' counsel was not ineffective, therefore, in failing to object to these comments.

Starks also complains of "trial counsel's failure to object to any aspect of the prosecution's egregiously improper closing argument."  Traverse at 63 (punctuation and capitalization altered from the original).  However, other than Starks' mistaken assertion that the prosecution improperly commented on Starks' remaining silent, Starks fails to specify how the prosecutor's closing argument was improper or where such impropriety is to be found.

Finally, as regards the testimony of Fulmer that Starks had been arrested on outstanding warrants, Starks' trial counsel *did* object to that testimony, despite Starks' assertion to the contrary.  *See* Transcript of Proceedings, Answer, attachment 17, pp. 281-83.  Counsel, however, declined the court's offer of a cautionary instruction.  This enjoys the presumption of a strategic decision, as a cautionary instruction could call the jury's attention to the comment that Starks had been arrested up on outstanding warrants.  Counsel's decision did not fall below an objective standard of reasonableness and, therefore, cannot serve as a basis for a claim of ineffective assistance of counsel.

In sum, Starks fails to demonstrate that the state appellate court's determination that trial counsel's performance was not deficient and that Starks was not prejudiced by any alleged deficiency was contrary to a holding of the Supreme Court or was an unreasonable application of such a holding to the facts of Starks' case.  For this reason,

64

Starks' third ground for relief, alleging ineffective assistance of trial counsel, should be dismissed.

D.    *Ground four:  The prosecutor violated Starks' right to due process by improperly vouching for the witnesses*

In his fourth ground for relief, Starks asserts that the prosecutor commented during trial and during closing arguments that resulted in an improper comment on the evidence or vouching.  Respondent denies that the prosecutor violated Starks' due process rights.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted).  To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also  United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir.2000).   Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  On federal habeas review, a habeas court should weigh such alleged "trial error" by (1) evaluating the error

65

in the context of the entire record; (2) asking whether the trial error had a substantial

and injurious effect on the jury's verdict, and (3) granting relief only if there is grave

doubt about whether the error was harmless.  *Brecht v. Abrahamson,* 507 U.S. 619,

637-38 (1993).

Starks references two of his state court briefs for the specifics of his allegations

of prosecutorial misconduct.  The more complete description of those allegations reads

as follows:

> During closing arguments at the Sky Bank robbery, the state's attorney told the jury that "it sounds like there isn't an issue in this case," and, while telling them that Starks had a right to trial by jury, added: "He may not have the right to a defense, but you have a right to a jury trial before you are convicted."  In an almost mocking manner, the prosecutor argued:  "The defendant chose to exercise his constitutional right in this manner.  That's his call.  That's fine.  We don't make any further judgments than that.  8/29/05 Trial Tr., 304.

> Despite a *nolle* on the Aggravated Robbery and Firearm Specification, and with no basis in the record, the prosecutor revisited those counts.  The jury was told "there's something in his hand."  "There's a shape, a shadow there, about what you'd expect if you wrapped a sock around something and obscured what it actually was."  8/29/05 Trial Tr., 305.

> After conceding the photograph was "not the greatest picture in the world," the prosecutor does the jury's job by telling them that "there's a lot of similarity there" between Starks and the perpetrator.  8/29/05 Trail Tr., 306.  Even though the eyewitness tellers and the bank security officers did not testify that they saw any similarity and, in fact, could not identify Starks as the perpetrator.

> Throughout his questioning during the second trial, the prosecutor asked questions and made such comments as:  "I know this is hard [for you]"; "I know you're upset"; "Is it fair to say you can't forget his face?"  10/17/05 Trial Tr., 138, 139, 171, 175.

> During closing arguments, the prosecutor commented on issues that were not evidence.  For example, realizing that the witness descriptions were hardly consistent, it was dismissed as Starks "likes to play game with his facial hair." 10/17/05 Trial Tr. 415.  To explain how Starks could regrow facial hair faster than a Chia pet, the prosecutor told the jury he had "friends and they don't shave twice a day, they look like chimpanzees and they'll tell you that.  All right?"  Trial Tr., 415, 420.

> Inserting an unnecessary element of terror, perhaps to overcome a weak case that was not a good example of investigative management, the prosecutor made a number of comments that were nothing short of hyperbole.  For example,

66

that Hall was "wondering if they're going to pull the trigger because you want to know is this man going to kill me for what's in the cash register?"  10/17/05 Trial Tr., 414.  "It's one of those moments when everything gets very real.  Everything gets very, very focused in your mind."  10/10/05 Trial Tr., 414.  Also, Starks "[c]an't change the way his eyes look when he glares at somebody."  10/17/05 Trial Tr., 415.  "These are people who survived traumatic incidents.  A man with a gun.  A man acting crazy.  A man jumping counters, running around counters, pointing guns, telling people you've got three seconds; you've got ten seconds."  10/17./05 Trial Tr., 419.  In fact, with the exception of Hall who claimed a permanent disability as a result of being manhandled, there was very limited testimony of this type.

Finally, Starks proceeded *pro se* during the second trial.  He did not testify.  Both are separate constitutional issues and rights.  However, the state argued during closing arguments that Starks failed to "directly challenge" the witness identification.  Essentially that the line between *pro se* counsel and defendant should have merged and Starks should have directly engaged the witness, thereby impeding his right not to testify."  10/17/05 Trial Tr., 416.

Appellant's Brief, Answer, Exh. 24, pp. 33-35.

In examining on direct appeal the state claim corresponding to this ground for relief, the state appellate court wrote in relevant part as follows:  "We have carefully reviewed each of the prosecutorial statements of which appellant complains and conclude that none individually nor as an aggregate would have affected the outcome of either trial.  Indeed, most were fair comment or argument for which objection at trial would not have been sustained."  *Starks*, 2007 WL 2745360 at *10.

Starks fails to make any effort to demonstrate that the state appellate court erred in determining that most of the comments were not improper and that Starks was not prejudiced by the remarks.  Instead, Starks relies on mere general assertions that the court was wrong:  "The state court's analysis in this case was not supported by clearly established federal law"; "[T]he comments made by the prosecutor . . . were improper.  The remarks were prejudicial to the petitioner"; "[T]he prosecutor was improperly trying to give his personal opinion of the case.  The comments rise to the level requiring

67

reversal in the instant case"; "[T]he remarks made by the prosecutor 'so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Traverse at 65 (punctuation and capitalization altered from the original).  Such general and conclusory assertions are not evidence.

Starks fails to demonstrate that any of the prosecutor's remarks were improper or that the state appellate court's conclusion that Starks was not prejudiced by those remarks was an unreasonable application of the law to the facts of Starks' case.  For these reasons, Starks' fourth ground for relief, alleging prosecutorial misconduct, should be dismissed.

E.      *Ground five:  The trial court denied Starks' right to due process by denying his motion for a new trial based on newly-discovered evidence*

        *Grounds nine and eleven:  The trial court denied Starks' right to due process when it denied his request for a new consolidated trial based on newly-discovered evidence*

        *Ground ten:  The trial court denied Starks right to due process when it denied his motion for a new trial based upon its finding that the evidence did not disclose a strong probability that the result would change if a new trial were granted*

Starks' fifth ground and tenth ground for relief both assert that the trial court violated his right to due process when it denied his motion for a new trial in the face of Finley's affidavit confessing to the Sunoco robbery.  As previously discussed, the trial court's conclusion that Finley's affidavit was not credible was entirely reasonable. Consequently, the trial court did not violate Starks' right to due process by denying Starks' motion for a new trial despite the Finley affidavit or by concluding that the outcome of a new trial would not be materially different in light of Finley's testimony.

Starks' ninth and eleventh grounds for relief are based upon the Finley affidavit

and upon Starks' claim of jury confusion:

> The decision of the trial court denying petitioner a new consolidated trial was prejudicial.  The jury confused the offenses, cumulated the evidence, and considered the evidence of the robberies during the consolidated trial as corroborative of each other.  In other words, the jury believe [sic] that the person responsible for the robberies was one person.  In this case, the jury believed mistakenly that petitioner was that one person.

Traverse at 86; *see also* p. 88.  Starks offers no further explanation for these assertions and no evidence to support them.  Indeed, Starks claims that one person *did* commit the Sunoco, Cash Advance, and BP robberies:  Finley.  Again, this claim is based on the assumption that Finley's evidence was highly credible.  As the state trial court's conclusion that Finley's evidence was not credible was reasonable (*i.e.*, not an unreasonable determination of the facts in light of the record before the court), Starks' ninth and eleventh grounds for relief must fail.

For the reasons given above, Starks' fifth, ninth, tenth, and eleventh grounds for relief should be dismissed as without merit.

F.    *Grounds twenty-three and twenty-four:  Whether Starks was denied effective assistance of appellate counsel and due process when appellate counsel failed to invoke Ohio App. R. 9(C) or (E) to correct errors in the trial record*

Starks alleges in his twenty-third and twenty-fourth grounds for relief that he was denied effective assistance of appellate counsel and his right to due process when appellate counsel failed to invoke Ohio App. R. 9(C) or (E)[12] to correct errors in the trial record.  Starks bases these grounds for relief upon his claims that the trial and hearing transcripts were inaccurate.  As noted earlier, Starks has never advanced any evidence

---

[12]    Ohio App. R. 9(A) and (E) address the composition and correction of the record of the trial court proceedings for purposes of appeal.

69

to support that claim other than his own self-serving affidavit.  Without credible evidence

that the trial and hearing transcripts were, indeed, inaccurate, Starks does not

demonstrate that appellate counsel was ineffective for failing to correct those records or

that the alleged failure to correct those records denied him due process.  Moreover,

because the state appellate court rejected this claim as "unsubstantiated," Decision and

Judgment Entry, Answer, Exh. 93, p. 4, Starks must demonstrate that the state

appellate court's determination was contrary to a holding of the Supreme Court or

involved an unreasonable application of such a holding to the facts of Starks' case.

Starks makes no such demonstration.  As Starks does not carry his burden of proof in

support of his twenty-third and twenty-fourth grounds for relief, those grounds for relief

should be dismissed as without merit.

G.      *Ground twenty-five:  Whether Starks was denied effective assistance of appellate
        counsel when appellate counsel failed to argue that trial counsel was ineffective
        for not presenting alibi witnesses for the Sky Bank robbery*

        Starks' twenty-fifth ground for relief assets that appellate counsel should have

argued on direct appeal that Starks' trial counsel was ineffective for not calling Stark's

wife, Andrea Starks, as an alibi witness during the Sky Bank robbery trial.  Starks cites

Andrea Starks' affidavit, presented to the state appellate court with Starks' application to

reopen his appeal pursuant to R. 26(B), as support for the following:  (1) Andrea Starks

was in class at Owens Community College on September 30th, 2005, the day of the

Sky Bank robbery, until 3:50 p.m.; (2) she walked to the college parking lot immediately

after class and saw Starks in their car in that parking lot; (3) she saw Starks in the car

before 4:00 p.m.; and (4) Starks' counsel never interviewed her to discover that she

could provide alibi testimony.  *See* Affidavit of Andrea Starks, Traverse, Exh. 24.  Starks

70

also contends that the testimony of Agent Fulmer would have demonstrated that it was impossible to drive from the Sky Bank to the parking lot in question in fewer than 15 minutes.  Thus, Stark concludes, his trial counsel was ineffective for failing to call Andrea Starks as an alibi witness, and his appellate counsel was ineffective for failing to argue ineffective assistance of trial counsel in this respect on direct appeal.

Starks presented this claim to the state appellate court in his R. 26(B) application to reopen his direct appeal.  The state appellate court, however, misunderstood Starks' claim.  The court wrote the following in responding to Starks' argument:

> Appellant's wife, according to her class schedule, had class from 2:00 p.m. to 3:50 p.m. on the day of the bank robbery.  Appellant has provided no evidence that his wife was not in class the day of the bank robbery, or that she could otherwise provide appellant with an alibi.  Without the ability to reliably account for her husband's whereabouts, appellant's wife could not provide an effective alibi.  Trial counsel, therefore, was not ineffective for failing to present appellant's wife as an alibi witness . . . .

Decision and Judgment Entry, November 28, 2007, Answer, Exh. 93, p. 4.  As the state appellate court failed to address Starks' argument, this court must address his claim *de novo*.

There are serious problems with Starks' argument.  Fulmer never testified that it was impossible to drive from Sky Bank to the college parking lot in question in fewer than 15 minutes.  Rather, he testified that it took 10-15 minutes to drive from the Sky Bank *to the Starks' residence.  See* Transcript of Proceedings, Answer, attachment 17, p. 287.  Starks cites no testimony regarding the time necessary to drive from the Sky Bank to the college parking lot.  Starks fails, therefore, to demonstrate that Andrea Starks' testimony would have provided him with an alibi.  Having failed to demonstrate that Andrea Starks' testimony would have provided him with an alibi, Starks fails to

71

demonstrate that not calling her as an alibi witness fell below an objective standard of reasonableness or prejudiced him in any way.[13]  Starks does not carry his burden of showing both deficient performance and prejudice resulting from that performance.

Because Starks does not demonstrate that his wife could have served as an alibi witness, he does not demonstrate that trial counsel was ineffective for failing to present her as an alibi witness or that appellate counsel was ineffective for failing to argue that trial counsel was ineffective in that respect.  For these reasons, Starks' twenty-fifth ground for relief should be dismissed as without merit.

H.     *Ground thirty-two:  Starks' re-sentencing to greater than minimum and consecutive sentences violated his Sixth Amendment right to a trial by jury and the ex post facto clause of the United States' Constitution*

Starks argues in his thirty-second ground for relief that his re-sentencing violated his Sixth Amendment right to a trial by jury because it required factfinding by the sentencing court in violation of the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Starks also contends that his re-sentencing violated the *Ex Post Facto* Clause of the United States Constitution because he was sentenced to greater than minimum and consecutive sentences according to the sentencing scheme fashioned by *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), a decision handed down after the commission of the crimes upon which Starks was convicted.  Respondent replies that both claims are incorrect.

In *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi*, the Supreme

---

[13]  Furthermore, the state had evidence that Starks confessed to the Sky Bank robbery, that a sheet of paper containing Andrea Starks' name was left by the bank robber, and that eyewitnesses identified Starks.  A decision not to present Andrea Starks as a witness enjoys a presumption of trial strategy.

Court held that the Sixth Amendment's guarantee of the right to trial by jury requires that all facts necessary to a determination of guilt or to sentence enhancement be found by a jury.  Until 2006, Ohio sentencing statutes required sentencing a defendant to minimum and concurrent terms of incarceration unless the sentencing court determined that certain factors mandated longer or concurrent sentences.  Those factors, described at Ohio Rev. Code § 2929.12, required judicial factfinding of the sort later found to be unconstitutional by *Blakely* and *Apprendi*.

In *Foster*, the Ohio Supreme Court found this portion of the Ohio sentencing statutes to be unconstitutional and severed it from the rest of the sentencing regime.  As a consequence of *Foster's* judicial reconstruction of the Ohio sentencing statutes, the Ohio Supreme Court directed sentencing courts as follows:

> Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively.

*Foster*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.  Thus, *Foster* allowed Ohio courts to sentence defendants to any sentence in the appropriate range or to consecutive sentences without engaging in the sort of judicial factfinding prohibited by *Blakely* and *Apprendi*.

Starks was sentenced to consecutive terms and more than minimum sentences. The state trial court re-sentenced Starks after the Ohio Supreme Court's decision in *Foster*.  In ruling on this ground for relief in adjudicating Starks' delayed appeal, the state appellate court cited the Ohio Supreme Court for the proposition that sentencing pursuant to *Foster* did not violate either the Sixth Amendment right to a jury trial or the

73

*Ex Post Facto* Clause.  This accords with rulings of the Sixth Circuit that sentencing pursuant to *Foster* does not violate the Sixth Amendment right to a jury trial or the *Ex Post Facto* Clause.  *See Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010); *Lininger v. Welch*, 2012 WL 516181 (6th Cir. Feb. 17, 2012).  Starks fails to show that the state appellate court's decision was contrary to or an unreasonable application of a holding of the Supreme Court.  Starks does not demonstrate, therefore, that he is entitled to habeas relief because his sentences violated his Sixth Amendment right to a trial by jury or the *Ex Post Facto* Clause.  Consequently, Starks' thirty-second ground for relief should be dismissed as without merit.

I.     *Ground thirty-three:  The Ohio Supreme Court's determination that Starks was a vexatious litigator violated his right to due process*

Starks argues in his thirty-third ground for relief that the Ohio Supreme Court erred in declaring him a vexatious litigator pursuant to Ohio S. Ct. Prac. R. 14(5)(B) ("R. 14") because it did so upon the state's false representation of the facts of his case.

Once again, this court does not generally examine the decisions of state courts on questions of state law: "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.  Whether the Ohio Supreme Court acted properly in declaring Starks a vexatious litigator is not a question for this court unless the decision violated Starks' federal constitutional rights.

Starks presents various arguments regarding the reasons why the Ohio Supreme Court declared him to be a vexatious litigator and the inadequacy of those reasons. These arguments, however, rest upon pure supposition, because the Ohio Supreme Court reached its decision *sua sponte* and without opinion.  *See State v. Starks*, 120

Ohio St.3d 1456, 898 N.E.2d 970 (Table) (Dec. 31, 2008).

Starks also argues that declaring him a vexatious litigator pursuant to R. 14

necessarily deprives him of due process.  However, merely declaring a litigant a

vexatious litigator does not violate due process.  Rule 15(B) provides in relevant part:

> If a party habitually, persistently, and without reasonable cause engages in
> frivolous conduct . . . , the Supreme Court may, sua sponte or on motion by a
> party, find the party to be a vexatious litigator.  If the Supreme Court determines
> that a party is a vexatious litigator under this rule, the Court may impose filing
> restrictions on the party.  The restrictions may include prohibiting the party from
> continuing or instituting legal proceedings in the Supreme Court without first
> obtaining leave . . . .

Thus, a party declared to be a vexatious litigator is not denied access to the Supreme

Court.  Rather, that party's arguments must be screened by the court to determine

whether those arguments are frivolous.  In *Mayer,* 91 Ohio St. 3d 3, 740 N.E.2d 656, the

Ohio Supreme Court examined Ohio Rev. Code § 2323.52(A)(3), a statute parallel to R.

14, and wrote as follows:

> [The statute] provides authority to the court of common pleas to require, as a
> condition precedent to taking further legal action in certain enumerated Ohio trial
> courts, that the vexatious litigator make a satisfactory demonstration that the
> proposed legal action is neither groundless nor abusive. . . [T]he statute is not
> designed, nor does it operate, to preclude vexatious litigators from proceeding
> forward on their legitimate claims.  Instead, it establishes a screening mechanism
> under which the vexatious litigator can petition the declaring court, on a
> case-by-case basis, for a determination of whether any proposed action is
> abusive or groundless.

*Mayer* 91 Ohio St. 3d at 13-14, 740 N.E.2d at 665-66.  Requiring a defendant with a

history of abusive litigation to demonstrate that a proposed action is neither groundless

nor abusive does not violate fundamental fairness.  *See also Bozsik v. Bradshaw*, 2010

WL 7702230, *38-*39 (N.D. Ohio June 4, 2010).

For the reasons given above, Starks does not show that the Ohio Supreme

Court's decision declaring him to be a vexatious litigator violated his right to due process.  Thus, his thirty-third ground for relief should be dismissed as without merit.

<div align="center">IV.</div>

For the reasons given above, Starks' grounds for relief should be dismissed as follows:

| Reason for dismissal | Ground for relief to be dismissed |
|---|---|
| Non-cognizable claim | 14-20, 22, 29-31 |
| Procedural default | 21, 26-28 |
| Without merit | 1-5, 9-11, 23-25, 32, 33 |
| Previously withdrawn | 6-8, 12, 13, 17 |

 As these dismissals account for all of Starks' claims, Starks' petition should be dismissed in its entirety with prejudice.


Date:  April 2, 2013                          /s/ Nancy A. Vecchiarelli
                                             United States Magistrate Judge

<div align="center">**OBJECTIONS**</div>

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**