UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

VERDELL STARKS,

        Petitioner,

vs.

ED SHELDON, Warden,

        Respondent.

------------------------------------------------------

CASE NO. 3:12-CV-00191

ORDER & OPINION
[Resolving Doc. No. 1.]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    Verdell Starks petitions for a writ of habeas corpus under 28 U.S.C. § 2254.[1]  Starks seeks relief from Ohio convictions for a series of armed robberies.[2]  Respondent, Warden Ed Sheldon, opposes the petition.[3]  On April 2, 2012, Magistrate Judge Nancy A. Vecchiarelli filed a Report and Recommendation that recommended the Court deny Stark's petition.[4]  Starks objects to the Magistrate Judge's Report and Recommendation.[5]  For the reasons described below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Starks's petition for a writ of habeas corpus.

---

[1] [Doc. 1.]

[2] [Doc. 1.]

[3] [Doc. 11.]

[4] [Doc. 40.]

[5] [Doc. 43.]

-1-

Case No. 3:12-CV-00191
Gwin, J.

## I.

The Ohio Court of Appeals summarized the facts underlying Starks's convictions:

{¶ 3} "On August 23, 2004, an African–American male wearing a wig, baseball cap and large tinted glasses entered a Toledo Cash Advance store. The man pointed what appeared to be a gun wrapped in cloth at the office manager, gesturing to the counter where the money was kept. He said, 'You have three seconds.' The manager opened the cash drawer and handed over a little over $200. The robber fled.

{¶ 4} "A week later, an African–American male wearing a shoulder length wig came into a Toledo BP station, jumped the counter and grabbed the attendant, pointing a gun at her head. The robber pushed the attendant to the cash register and ordered her to open it. When she did, he grabbed the money, slightly under $200, ordered the attendant into a back room and fled.

{¶ 5} "On September 26, 2004, a gunman wearing a hooded sweatshirt and large tinted glasses entered a Toledo Sunoco station, telling the attendant that she had ten seconds to open the cash drawer. The man took the bills in the cash drawer, under $100, and left, telling the attendant to, 'have a good night.'

{¶ 6} "On September 30, 2004, an African–American male carrying a handbag and wearing a blue dress, a wig and tennis shoes entered a South Toledo branch of Sky Bank. With a curved object wrapped in a sock in his right hand, the robber leaped the counter, pushed aside the teller and emptied the contents of her drawer into his handbag. Following this, he jumped on the counter, stood, turned and told everyone to, 'Have a good day'. He then fled with more than $1,000.

{¶ 7} "Police and FBI investigating the bank robbery found a sheet of paper in the secure area behind the bank's counter. It was a worker document for one Andrea Starks. Sky Bank ascertained that Andrea Starks was not a customer. A review of bank security photographs revealed that when the robber entered the bank he was carrying a piece of paper. When he left, the paper was no longer visible.

{¶ 8} "Andrea Starks is the spouse of appellant, Verdell Starks. Investigators believed that appellant matched the description given by witnesses in all four robberies. Police assembled a photo array, containing pictures of six men, including appellant, and showed the array to witnesses. Each of the witnesses picked appellant from the array.

{¶ 9} "Appellant was arrested and, in an interrogation with the FBI, confessed to the bank robbery. On October 14, 2004, appellant was named in an indictment charging two counts of aggravated robbery with firearm specifications and two counts of

Case No. 3:12-CV-00191
Gwin, J.

robbery. The indictment included the Sunoco station robbery for which he was eventually convicted. On January 28, 2005, a second indictment was handed down, charging appellant with an additional four counts of aggravated robbery with firearm specifications and four counts of robbery. Included in this indictment were the Sky Bank, Cash Advance, and BP robberies. These cases were consolidated for trial.

{¶ 10} "Appellant pled not guilty and moved to suppress witness identification and his statements to police. He also moved to sever the bank robbery case from the rest of the charges. The trial court denied appellant's suppression motion, but granted severance. A subsequent motion to sever the remaining armed robbery charges from each other was denied.

{¶ 11} "Following a jury trial, appellant was convicted of the bank robbery. Before trial for the remaining armed robbery charges, appellant dismissed his counsel and elected to proceed as his own trial counsel, with a court-appointed backup counsel to provide aid. Following another jury trial, appellant was found guilty of three counts of aggravated robbery with two firearm specifications.

{¶ 12} "The trial court denied appellant's motion for a new trial and, following a presentence investigation, sentenced him to a four-year period of incarceration for the bank robbery, to be served consecutively to five years for the Sunoco robbery, five years for the BP robbery and two consecutive three-year terms for the firearm specifications. An additional concurrent five-year sentence was imposed for the Cash Advance robbery. The remaining counts in the indictment were dismissed prior to or during trial."

{¶ 13} On July 3, 2008, appellant filed a motion for new trial on the basis of newly discovered evidence in the above-captioned case. The motion related to appellant's conviction for aggravated robbery at the Cash Advance store on August 23, 2004. An evidentiary hearing on the matter was held on October 23, 2009. Appellant represented himself at the hearing with standby counsel present. At the hearing, appellant presented affidavits and testimony by Robert Finley and Dennison Bower, III. Finley testified that he was the person who robbed the Cash Advance store on August 23, 2004, and Bower testified that Finley told him that Finley had robbed the Cash Advance store.

{¶ 14} In an opinion and judgment entry dated June 10, 2010, the trial court denied appellant's motion for new trial, finding that both Finley and Bower's testimony lacked credibility. Specifically, the trial court pointed to inconsistencies in Finley's testimony; the fact that Finley has a lengthy record of convictions of serious crime that significantly impeach his record; the fact that many of Finley's answers came in response to leading questions by appellant; the fact that Finley's affidavit, purportedly prepared by Finley himself, was similar in format to the statements and pleadings

Case No. 3:12-CV-00191
Gwin, J.

submitted by appellant, acting pro se; the questionable nature of the accuracy of Finley's memory; the lack of reasonableness of some of Finley's testimony; and the lack of a prior admission on the part of Finley to the Cash Advance store robbery. The trial court gave no weight to Bower's testimony, because Bower's testimony depended upon Finley's credibility, which the court found to be lacking.

{¶ 15} The trial court additionally pointed out that it had presided over appellant's trial and heard the testimony of the victim in the Cash Advance robbery. Further, the trial court stated that the victim was a strong witness, who had no doubt that appellant was the man who robbed her. Upon weighing her testimony along with all of the other evidence presented at trial against the newly discovered evidence provided by appellant, the trial court concluded that the evidence did not disclose a strong probability that it would change the result if a new trial were granted. On that basis, the trial court denied appellant's motion for a new trial.[6]

After a protracted state appeals process, Starks filed a 229-page habeas petition claiming thirty-three grounds for relief as well as a sixty-two page memorandum in support.[7] The Warden answered, saying that Starks is not entitled to relief.[8] Starks then filed a 159-page Traverse and withdrew six of his claims for relief but otherwise maintained his claims for relief.[9] On April 2, 2013, Magistrate Judge Vecchiarelli issued a 76-page Report and Recommendation in which she recommends that of Starks's remaining claims, eleven are not cognizable on habeas, four are procedurally defaulted, and thirteen are without merit.[10] Starks then filed five pages of objections to the Magistrate Judge's Report and Recommendation citing twenty of his claimed grounds for relief.[11]

---

[6] *State v. Starks*, No. L–10–1191, 2011 WL 1330671, 2011-Ohio-1704 (Ohio Ct. App. Apr. 8, 2011).

[7] [Docs. 1, 1-1, 1-2, 1-3, 2.]

[8] [Doc. 11.]

[9] [Doc. 31.]

[10] [Doc. 40.]

[11] [Doc. 43.]

Case No. 3:12-CV-00191
Gwin, J.

## II.

### A. Federal Magistrates Act

The Federal Magistrates Act requires a district court to conduct a de novo review only of those portions of a Report and Recommendation to which the parties have made an objection.[12] "[O]bjections to a magistrate judge's report must be specific in order to focus the court's attention on the issues in dispute."[13]  The Court "need not provide *de novo* review where the objections are '[f]rivolous, conclusive or general.'"[14]  "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed.  The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."[15]  That is, "parties have 'the duty to pinpoint those portions of the magistrate's report that the district court must specially consider.'"[16]

### B. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[17] governs a federal court's review of a state prisoner's habeas corpus petition.  AEDPA limits federal review to only those claims in which a petitioner contends that he is in custody in violation of the Constitution,

---

[12] 28 U.S.C. § 636(b)(1).

[13] *Gant v. Bradley*, 181 F.3d 100 (6th Cir. 1999) (unpublished disposition).

[14] *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 n. 8 (5th Cir.1982)).

[15] *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

[16] *Mira*, 806 F.2d at 637 (quoting *Nettles*, 677 F.2d at 410).

[17] Pub. L. No. 104-132, 110 Stat. 1214 (1996); codified at 28 U.S.C. § 2254.

Case No. 3:12-CV-00191
Gwin, J.

laws, or treaties of the United States.[18] And a federal court cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[19]

To justify any grant of habeas relief, "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."[20] Furthermore,

> under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[21]

The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still should not grant relief unless it also finds that the state court ruling was unreasonable.[22]

### III.

**A. Failure to Object**

---

[18] 28 U.S.C. § 2254(a).

[19] 28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

[20] *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[21] *Williams*, 529 U.S. at 412-13.

[22] *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

-6-

Case No. 3:12-CV-00191
Gwin, J.

Few of Starks's objections pinpoint those portions of the Report and Recommendation to which Starks objects. It is not sufficient for Starks to identify the grounds to which he objects by number and incorporate by reference the grounds raised in his traverse. Such an attack gives no guidance of what issues are dispositive. Instead, Starks must go beyond his traverse and say what errors of reasoning he believe the Magistrate Judge to have committed. Only three of Starks's objections satisfy this requirement, and the Court discusses them in turn.[23] As to the rest of Sarks's objections, after independently reviewing Starks's claims to relief and the Magistrate Judge's Report and Recommendation, the Court agrees with the Magistrate Judge's Report and Recommendation and incorporates it by reference.

**B.  Procedural Default on Grounds Twenty-Six, Twenty-Seven, and Twenty-Eight**

With his fifth objection, Starks objects to the Magistrate Judge's recommendation "that Petitioner procedurally defaulted grounds 26; 27; and 28, by impermissibly raising them through hybrid representation."[24] He says that "the Magistrate , as well as Respondent and the State Court in this case, has avoided providing this Court with the facts which led up to Petitioner's *pro se* filings." In particular, he says that the State Appellate Court did entertain his *pro se* petition for a writ of mandamus, and, therefore, Ohio's courts do not regularly enforce this sanction.

Generally, the doctrine of independent and adequate state grounds "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent

---

[23] Starks's objections to the Magistrate Judge's Report and Recommendation with respect to grounds 2, 5, 9-11, 14-24, 29-31, and 33 do little more than identify the ground by number, identify the initial basis for Starks's claim, and reiterate the arguments made in Starks's Traverse by reference.

[24] [Doc. 43 at 2.]

Case No. 3:12-CV-00191
Gwin, J.

and adequate state procedural grounds."[25]  The four-part *Maupin* test determines whether a claim has been procedurally defaulted:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.[26]

Under the second prong, "there must be unambiguous state-court reliance on a procedural default for it to block [habeas] review."[27]

"[I]n Ohio, a criminal defendant has the right to representation by counsel or to proceed *pro se* with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously."[28]  Ohio refers to an attempt to do so as "hybrid representation."  In practice, this rule means that if a petitioner is represented by counsel then any claims raised exclusively in *pro se* filings are procedurally defaulted.  Such a rule is an adequate and independent ground for denying relief.[29]

---

[25] *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[26] *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)) (alterations in *Stone*).

[27] *Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003).

[28] *State v. Martin*, 816 N.E.2d 227, 232 (Ohio 2004).

[29] *See Hill v. Carlton*, 399 Fed. App'x. 38, 44 (6th Cir. 2010).

Case No. 3:12-CV-00191
Gwin, J.

Starks says that Ohio's courts do not regularly enforce this sanction, and, so it is not an adequate and independent ground for denying relief. Starks submits a Show Cause Order from the Ohio Court of Appeals dated April 18, 2007, and apparently filed in response to Starks's *pro se* petition for a writ of mandamus.[30] In the Order, the Ohio Court of Appeals orders the Respondent Judge to "either do the act requested by relator in his petition or show casue why he does not do so by filing an answer to the relator's petition or a motion to dismiss relator's petition."[31]

But, contrary to Starks's assertion, this order does not prove that Ohio did not actually enforce the procedural sanction. On July 24, 2007, the Court of Appeals ruled that

> [t]he trial court's May 29 decision also denies Starks [sic] motion to supplement the record on appeal in the direct appeal of his convictions pending before this court. We find that Starks may not appeal from the decision denying his motion to supplement since the motion was filed by Starks pro se and he is represented by counsel in his direct appeal of his convictions.[32]

This is the kind of unambiguous reliance on state procedural default rules that blocks this Court's review of Starks's claims.

**C. Actual Innocence**

Starks also objects to the Magistrate Judge's recommendation that he has procedurally defaulted grounds twenty-one and twenty-six through twenty-eight on grounds that he has a credible claim of actual innocence.[33] "[A] credible showing of actual innocence may allow a prisoner to

---

[30] [Doc. 31-5.]

[31] [Doc. 31-5.]

[32] [Doc. 11-1 at 685.]

[33] [Doc. 43 at 3.]

-9-

Case No. 3:12-CV-00191
Gwin, J.

pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."[34/] But Starks's evidence is far from credible.

"When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict."[35/] That is, to support a claim of actual innocence to overcome procedural default, Starks must present new evidence not presented to the jury and the Court then evaluates "how reasonable jurors would react to the overall, newly supplemented record."[36/] Starks offers three factual predicates for his actual innocence claim.

First, Starks says that the transcripts of the suppression hearings are inaccurate. But, Starks presents only his own self-serving statements in support.[37/] Viewed in light of the facts of the case, this evidence is not credible.

Starks also says that Robert Earl Finley confessed to the Cash Advance robbery and that Dennisson Bower, III, overheard these confessions. The trial court and the Ohio appellate court considered this purported confession. As the Ohio appellate court explained,

> {¶ 14} In an opinion and judgment entry dated June 10, 2010, the trial court denied appellant's motion for new trial, finding that both Finley and Bower's testimony lacked credibility. Specifically, the trial court pointed to inconsistencies in Finley's testimony; the fact that Finley has a lengthy record of convictions of serious crime that significantly impeach his record; the fact that many of Finley's answers came in response to leading questions by appellant; the fact that Finley's affidavit, purportedly prepared by Finley himself, was similar in format to the statements and pleadings submitted by appellant, acting pro se; the questionable nature of the accuracy of

---

[34/]*McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

[35/]*House v. Bell*, 547 U.S. 518, 538 (2006).

[36/]*Id*.

[37/][Doc. 31 at 107-08.]

Case No. 3:12-CV-00191
Gwin, J.

> Finley's memory; the lack of reasonableness of some of Finley's testimony; and the lack of a prior admission on the part of Finley to the Cash Advance store robbery. The trial court gave no weight to Bower's testimony, because Bower's testimony depended upon Finley's credibility, which the court found to be lacking.[38]

The Ohio Appellate Court then considered the trial court's decision on appeal:

> {¶ 27} Here, the trial court reasonably determined, based upon a totality of the circumstances, that the testimony of Finley and Bower—the same testimony upon which appellant relies in the instant case—was not credible. In addition, our review of the record reveals that Finley did not assert, either in his affidavit or at the October 23, 2009 hearing, that he committed the Sunoco robbery for which appellant was convicted. Rather, Finley's affidavit and testimony dealt solely with the Cash Advance robbery. Accordingly, we find that the trial court properly determined that the evidence submitted by appellant in support of his motion did not create a strong probability that it would change the result if a new trial were granted.[39]

Credibility is a factual issue. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[40] And 28 U.S.C. § 2254(d)(2) says that :

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Applied to Finley's purported confession, the state court's determination that Starks lacks credible evidence of actual innocence was plainly reasonable. And Starks fails to rebut by clear and convincing evidence, the State court's determination—made after an opportunity to observe Finley's

---

[38] *Starks*, 2011 WL 1330663.

[39] *Id*.

[40] 28 U.S.C. § 2254(e)(1).

Case No. 3:12-CV-00191
Gwin, J.

demeanor in open court—that Finley and Bowers simply were not credible.  Nothing required the state courts to believe Finely, and their reasons for not doing so were reasonable.

Finally, Starks says that the eyewitness identifications were unreliable and thus impilcate another person.  The Court considers the eyewitness identifications in context of whether they were impermissibly suggestive, the thrust of Stark's objection.

**D.  Reliability of Identification**

With his eight objection, Starks objects to the Magistrate Judge's recommendation that the identification procedure used to identify him was not impermissibly suggestive.[41]  He says that the photo arrays used by officers to identify him as the robber were unduly suggestive and that the subsequent in-court identifications were compromised when witnesses saw him in prison garb at a suppression hearing.

> In assessing the validity of a pretrial identification, this court follows a two-step analysis.  The court first considers  whether the procedure was unduly suggestive. . . .  The defendant bears the burden of proving this element. . . . . If the court does find that the procedure was unduly suggestive, it next evaluates the totality of the circumstances to determine whether the identification was nevertheless reliable.[42]

Starks's vague objection provides the Court little guidance in determining what errors Starks finds in the Report and Recommendation; he says only that he "suffered a constitutional injury when the trial court declined to suppress the witness identification.[43]  As the Magistrate Judge explained, Starks's claim has two components.  First, he appears to say that the process by which witnesses identified him from a photo array was impermissibly suggestive.  Second, he seems to say that the

---

[41][Doc. 43 at 3.]

[42]*Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994).

[43][Doc. 43 at 3.]

Case No. 3:12-CV-00191
Gwin, J.

identifying witnesses saw him in prison garb and shackles, tainting any further identifications. The Court addresses each in turn.

In his traverse, Starks appears to argue that the men used as fillers in the photo arrays in which witnesses identified her were both taller and heavier than him. But this is hardly obvious from the array, which only depicts the men from the shoulder up.[44/] And any suggestion that of difference in the amount of hair the men in the lineup have is hardly visisble, and, in any event, not of constitutional moment.[45/] Having reviewed the photo arrays used in this case, the Court is satisfied that they were not unduly suggestive.

Starks's second claim is less clear. As the state appellate court characterized Starks's claim, Starys says that "one of the witnesses picked someone else out of an earlier array and that a police statement that an arrest had been made unwarrantedly suggested that the individual sought would be in the array. [Starks] also asserts that, because he was seen in jail garb by two of the witnesses at the suppression hearing, this tainted their subsequent in-court identification of him and should not have been permitted."[46/]

As to the initial identification, the Constitution's concern is whether "the witness's attention was directed to a suspect because of police conduct."[47/] The record reveals no such conduct. Gwen Bowers, the witness who identified Starks as the perpetrator of the Sunoco robbery testified that when police detectives first interviewed her a couple of weeks after the robbery, she could not

---

[44/] [Doc. 34-1.]

[45/] *See Howard v. Bouchard*, 405 F.3d 459, 471 (6th Cir. 2005).

[46/] *State v. Starks*, Nos. L-05-1417, L-05-1419, 2007 WL 2745360, 2007-Ohio-4897 (Ohio Ct. App. Sept. 21, 2007).

[47/] *Howard*, 405 F.3d at 470 (quoting 2-5 Crim. Con. Law. § 5.05(2)(b).).

Case No. 3:12-CV-00191
Gwin, J.

identify the robber in a photo lineup.[48] Bowers then returned to the police station a week later, again viewed a photo lineup, and quickly identified Starks as the robber.[49] A detective then told his partner, within her earshot, "[s]he picked him out."[50] Made before Bowers's identification, this statement would be problematic, but made after she identified Starks, the statement did not direct her attention to Starks.

Starks's challenge to the identification of Laura Maunz who worked at the Cash Advance, fails for the same reason. Maunz initially misidentified another man from a photo lineup that apparently did not contain Starks's picture.[51] This misidentification would likely cast doubt on her reliability. But an erroneous identification is simply not akin to directing attention to Starks. and does not require suppression of her subsequent identification  And, as with Bowers, a detective's post-identification statement to Maunz that she had identified "the right man" in a subsequent photo lineup did not suggest Starks prior to that identification.[52]

Finally, Victoria Hall, the witness to the BP robbery said that detectives never talked to her about a particular suspect before she identified Starks.[53] Simply put, Starks does not show how any of these processes directed attention *to him* before witnesses identified him from the photo arrays.

---

[48][Doc. 11-6 at 31.]

[49][Doc. 11-6 at 34.]

[50][Doc. 11-6 at 34.]

[51][Doc. 11-9 at 39.]

[52][Doc. 11-9 at 39.]

[53][Doc. 11-6 at 51.]

-14-

Case No. 3:12-CV-00191
Gwin, J.

Starks's second sub-claim, that witnesses saw him shackled or in prison garb before a suppression hearing, is more troubling.  Nonetheless, the suppression hearings reveal no testimony on this topic from the witnesses—only Stark's own unsworn statements to the Court.  And, where a witness has only fleeting views of the defendant seated in a courtroom, the viewing is only minimally suggestive.[54]  Here, Starks''s unsworn statement suggests that witnesses to the Sunoco and BP robberies, Bowers and Hall, did not even see Starks in the courtroom.  Instead, they only appear to have seen him in the hallway outside the courtroom, and after they had made identifications from photo arrays.  In this context, the Court finds that the state Court's ruling that there was no constitutional violation was not impermissibly suggestive.

Any further doubt as to the reliability of witness identifications was properly the jury's consideration..  Generally, "it suffices to test reliability [of eyewitness identification] through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt."[55]  Here, Starks presented evidence of the eyewitnesses' reliability to the jury—as the extensive citations to trial testimony in his briefing suggests.  The Constitution's concern is "*when the police use an unnecessarily suggestive identification procedure*."[56]  They did not because they did not direct attention to him.

### IV.

---

[54]*Id*.

[55]*Perry v. New Hampshire*, 132 S. Ct. 716, 721 (2012).

[56]*Id*. at 726.

Case No. 3:12-CV-00191
Gwin, J.

For these reasons, this Court **ADOPTS** the Report and Recommendation of Magistrate Judge Vecchiarelli and **DENIES** Petitioner Starks's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith only on Stark's identification claim (Ground Two of Stark's Petition) and hereby issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) on this claim only.

IT IS SO ORDERED.


Dated: August 5, 2013                     s/          *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE